UNITED STATES v. STROHMEYER & ARPE CO.

(Circuit Court of Appeals, Second Circuit.   February 16, 1909.)

No. 136 (4,957).

CUSTOMS DUTIES (§ 30*)—CLASSIFICATION—CAULIFLOWERS IN BRINE—"VEGETABLES IN THEIR NATURAL STATE"—PREPARED—PRESERVED—"VEGETABLES PREPARED OR PRESERVED."

Cauliflowers that have been trimmed, washed, and packed in brine for preservation during transportation, and to keep them in their natural state, and that when taken out of the brine and washed are still in their natural state, are dutiable under Tariff Act, July 24, 1897, c. 11, § 1, Schedule G, par. 257, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1650), as "vegetables in their natural state," rather than under paragraph 241, 30 Stat. 170 (U. S. Comp. St. 1901, p. 1649), as "vegetables prepared or preserved."

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 30.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

The Circuit Court affirmed a decision of the Board of General Appraisers (G. A. 6,593, T. D. 28,174), reversing the action of the collector. The following is the opinion of Platt, District Judge, in the court below:

The merchandise in question consists of cauliflower, trimmed, washed, and packed in a weak brine. It was assessed for duty at 40 per cent. ad valorem under the provision in Act July 24, 1897, c. 11, § 1, Schedule G, par. 241, 30 Stat. 170 (U. S. Comp. St. 1901, p. 1649), for "all vegetables prepared or preserved, including pickles and sauces of all kinds." The importers protested, claiming the same properly dutiable at 25 per cent. ad valorem under paragraph 257, covering "vegetables in their natural state."

Let me add only a word to the majority opinion in this case, with which I feel bound, under the law as it now stands, to coincide. Without brine cauliflower would not keep more than two or three days in warm weather. It is a vegetable very susceptible to decay. Our home pickle manufacturers, then, must put the cauliflowers which they buy for pickles into brine before they finally treat them for pickles. Is not a cauliflower bought from a Dutchess county farmer by a New York pickler still in its natural state until it is finally subjected to the pickling process? The weak brine has been used to hold the vegetable in a state as near as possible to that of nature. It does not take much longer to get the vegetable from a foreign country than from many of the outlying farm districts at home. The domestic manu-

---

facturers put the local product in a stronger brine than that used upon the imported article. Such a brine may act as a preservative; but the weak brine of the imported article does not appear to have the same effect. The latter is a mere temporary expedient to arrest decay and retain the form which nature gives to the article. It is not capable of preventing decay for any appreciable length of time. It is conceded by the government that, if the cauliflowers were brought over in cold storage, they ought to be classified as in their natural state. I can see no distinction between such a case and the method adopted herein.

The decision of the Board of General Appraisers is affirmed.

D. Frank Lloyd, Asst. U. S. Atty.

Everit Brown, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The merchandise in controversy is cauliflower trimmed, washed, and packed in brine for preservation during transportation. The collector assessed duty at the rate of 40 per cent. ad valorem under Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 241, 30 Stat. 170 (U. S. Comp. St. 1901, p. 1649), which provides for "all vegetables, prepared or preserved." The importer contends that it should have been classified under paragraph 257, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1650), which provides an ad valorem duty of 25 per cent. for "vegetables in their natural state."

The Board and the Circuit Court concur in the opinion that the importers' contention is well founded, and we see no reason for reaching a different conclusion. The question, briefly stated, is whether the imported cauliflower, concededly a vegetable, when it arrived at the port of entry was in its natural state or prepared or preserved.

The tariff act, like all statutes, must be given a common-sense construction. If paragraph 257 be construed literally it would result in the prohibition of the importation of all vegetables, for the moment a vegetable is cut from its growing stem or taken from the ground it ceases, in this restricted sense, to be in its natural state. If an exceedingly strict construction were adopted, it would exclude vegetables which have been washed or trimmed or from which decayed or superfluous leaves or stems have been removed; for these too, strictly speaking, are not in their natural state. Of course such a construction is absurd and no one contends to the contrary. The statute must be so interpreted as to give force to the evident intent of Congress to permit vegetables, as they are known and dealt with in this country, as they come from the farm and garden, to enter by paying a duty of 25 per cent.

The higher duty imposed by paragraph 241 indicates that it was intended to apply to those vegetables which have been advanced in value by being prepared or preserved. It was not seriously disputed at the argument that the contention of the government would render paragraph 257 nugatory, except as to vegetables coming here from Canada, Mexico, and possibly some of the West Indian Islands, for the reason that, unless some artificial means were adopted to prevent it, the vegetables would decay on the voyage. It was suggested that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

where refrigerating ships and railway cars were available decay might be prevented. The expense of such transportation would probably be too great for practical application. However, if a vegetable may be kept in its natural state by an elaborate system of cold storage, it is not entirely plain why a like result may not be produced by immersing it in weak brine. We think the cauliflower in question was clearly in its natural state before being placed in the brine, that this was done to keep it in its natural state, and that when taken out of the brine and washed it was still in its natural state. Any doubt upon this question was removed by an inspection of the exhibits, which concededly represent the imported merchandise.

The facts are so clearly and fully stated in the opinions below that it is wholly unnecessary to restate them in extenso. The testimony is overwhelmingly to the effect that the merchandise is placed in the weak brine to preserve it during transportation. This is precisely what is done in this country when it is desired to prevent cauliflower from decaying. We cannot believe that this effort to keep the cauliflower in "the way the farmer brings them to you" can be regarded as having a directly opposite effect, changing them from their natural state to a prepared or preserved state.

The decision is affirmed.