UNITED STATES *v.* THE HOTHOUSE PRODUCTS CORP., QUINN & WERNER (No. 3670) [1]

[1] T.D. 46789.

United States Court of Customs and Patent Appeals, November 6, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Reuben Wilson*, special attorney, of counsel), for the United States.
*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument October 3, 1933, by Mr. Lawrence and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court, sustaining three protests of appellees to the classification by the collector at the port of New York of certain shipments of endives from Belgium as "Vegetables in their natural state," under paragraph 774 of the Tariff Act of 1930, the pertinent provisions of which read as follows:

PAR. 774. Vegetables in their natural state, * * * not specially provided for, 50 per centum ad valorem.

Appellees claimed the merchandise to be dutiable under paragraph 775 of said act, the pertinent provisions of which read as follows:

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, * * * not specially provided for * * *, 35 per centum ad valorem.

The lower court found that the merchandise imported consisted of only a part of the vegetables, a substantial portion of the outer leaves having been removed, and accordingly held the merchandise to be dutiable at 35 per centum ad valorem under the provision in said paragraph 775 for "Vegetables * * * reduced in size." Judgment was entered accordingly, and from such judgment this appeal is taken.

Appellees introduced the testimony of three witnesses in support of their claims. The Government offered no evidence.

The testimony shows that the endive plant is first raised from seed; when the plants are of sufficient size they are taken out of the ground, the leaves are cut off, and the root is planted a considerable distance below the surface of the soil. After about two weeks the farmer takes it from the ground, cuts off the roots, cleanses it and peels off the outer leaves. At the beginning of the season, according to the testimony of a witness on behalf of appellees, Eugene Fynaut, 10 to 15 per centum of the leaves are pulled off, and later in the season about 5 per centum of the leaves are removed, before the endives are placed upon the market, and at the beginning of the

season the leaves pulled off are sold, and those removed later in the season are thrown away in the field.

Frank J. Quinn, a partner of the appellee Quinn & Werner, testified that in preparing the endive for shipment to this country it is diminished practically one fifth in size. He also testified that the American grower of endives follows the same processes, and when the groceryman gets it from the domestic producer it is in the same condition as is the imported endive here involved.

The question before us for determination is the meaning to be ascribed to the words "reduced in size" as used in said paragraph 775. We are of the opinion that Congress did not intend by this language that all vegetables reduced in size from the condition in which they are taken from the ground should be classified under said paragraph 775. To so hold would exclude many vegetables, like cabbage and celery, from classification as "vegetables in their natural state" under paragraph 774, if decayed leaves of the cabbage were removed or the root of the celery stalk were severed.

The case of *United States* v. *Strohmeyer & Arpe Co.*, 167 Fed. 533, decided by the Circuit Court of Appeals, Second Circuit, involved the construction of the words "Vegetables in their natural state" as used in paragraph 257 of the Tariff Act of 1897. The merchandise there involved was cauliflowers trimmed, washed and packed in a weak brine.

The court in its opinion said:

The Board and the Circuit Court concur in the opinion that the importers' contention is well founded, and we see no reason for reaching a different conclusion. The question, briefly stated, is whether the imported cauliflower, concededly a vegetable, when it arrived at the port of entry was in its natural state or prepared or preserved.

The tariff act, like all statutes, must be given a common-sense construction. If paragraph 257 be construed literally it would result in the prohibition of the importation of all vegetables, for the moment a vegetable is cut from its growing stem or taken from the ground it ceases, in this restricted sense, to be in its natural state. If an exceedingly strict construction were adopted, it would exclude vegetables which have been washed or trimmed or from which decayed or superfluous leaves or stems have been removed; for these too, strictly speaking, are not in their natural state. Of course such a construction is absurd and no one contends to the contrary. The statute must be so interpreted as to give force to the evident intent of Congress to permit vegetables, as they are known and dealt with in this country, as they come from the farm and garden, to enter by paying a duty of 25 per cent.

In harmony with the foregoing, we are of the opinion that it was the intent of Congress that vegetables should be regarded as being in their natural state, and not reduced in size, if the ordinary and usual process employed by the grower is to remove even a substantial percentage of the outer leaves before placing them on the market. It is our opinion that when Congress used the words "reduced in size," it

comtemplated, with reference to vegetables of this character, a reduction in size beyond the point that such vegetables are ordinarily reduced in size as an incident of placing them in a marketable condition. In other words, if endives, as grown in this country and abroad, are not usually sold or dealt in without removing a part of the leaves, then with such leaves removed they are in their natural state and not reduced in size in a tariff sense.

The testimony abundantly establishes the fact that a portion of the leaves of endives is always removed by the grower before placing them on the market, both in this country and in Belgium, and that, except at the beginning of the season, the leaves removed are thrown away in the field.

Had there been any testimony that endives were also marketed by farmers without the removal of a portion of the leaves, we might come to a different conclusion, but upon the record before us we are constrained to hold that the lower court was in error in holding that the endives here involved had been "reduced in size" within the meaning of those words as used in said paragraph 775, and hold that the merchandise was correctly classified by the collector.

The judgment of the United States Customs Court is *reversed*.