60 Wn.2d 825 (1962)
376 P.2d 433
THE STATE OF WASHINGTON, on the Relation of Arrow Transportation Company of Delaware et al., Appellant,
v.
WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION et al., Respondents.[*]
No. 36320.
The Supreme Court of Washington, Department Two.
November 21, 1962.
James T. Johnson, for appellant.
The Attorney General, Robert E. Simpson, Assistant, Dean H. Eastman, and Roger J. Crosby, for respondents.
OTT, J.
March 31, 1960, Arrow Transportation Company of Delaware and others, each of which is a common carrier *826 engaged in hauling petroleum and other liquid products in bulk, filed with the Washington Public Service Commission (now the Washington Utilities and Transportation Commission) a complaint against Chinook Motor Freight, Inc. The complaint alleged, inter alia, that Chinook Motor Freight, Inc., was unlawfully transporting liquid petroleum products in bulk, and requested the commission to order Chinook Motor Freight, Inc., to show cause why it should not be ordered to cease its unlawful operation.
May 2, 1960, Chinook Motor Freight, Inc., answered the complaint, admitted that it had hauled liquid petroleum products in bulk, but denied that it was performing such service illegally inasmuch as it had authority to do so under its general freight permit.
For convenience, Arrow Transportation Company of Delaware will hereinafter be referred to as Arrow, and as though it were the sole complainant. The Washington Utilities and Transportation Commission will be referred to as the commission, and Chinook Motor Freight, Inc., will be referred to as Chinook.
At the hearing before the commission, the parties stipulated that:
April 5, 1938, the commission granted to E.S. and H.K. Prentice common carrier permit No. 3703 which, as amended May 16, 1938, authorized the hauling of "General Freight in Eastern Washington and between points in Eastern Washington and points in Western Washington." December 21, 1938, permit No. 3703 was consolidated with common carrier permit No. 1748 which the commission had granted to Harry Morrison on November 19, 1934. Chinook became the assignee of permit No. 1748, as consolidated, on October 17, 1956, and has continuously to this date carried on its transportation business in this state under authority of the consolidated permit. Prior to April 10, 1944, the commission had not defined the scope of the term "general freight." On that date, it issued General Order M.V. No. 92, which contained the following rule that is still in effect:
*827 "[Rule 23.] Rights contained in permits shall be defined and construed, and carriers classified according to Appendix `A' herein, entitled `Classification of Brokers, Forwarders and Motor Carriers of Property.'"
Appendix "A" defined general freight as "both common and contract carriers transporting commodities generally, except such commodities as require special equipment or service."
The commission did not notify any carrier of its intention to adopt the definition of the term "general freight," but did mail to all permit holders a copy of the rules and regulations adopted by General Order M.V. No. 92, which became effective May 1, 1944.
In addition to these stipulated facts, Arrow called an employee of the commission as an expert witness. He testified that, at the time permit No. 3703 was granted to the Prentices, the commission used a confidential classification which contained essentially the same definition of the term "general freight" as set out in Appendix "A" to General Order M.V. No. 92.
The commission, in analyzing the employee's testimony, stated:
"At the date on which respondent's [Chinook] predecessors received their general freight rights Mr. Downs, pursuant to oral instructions from the Commission, was using a printed permit classification manual as the basis for drafting the phraseology of permits then being issued. This manual was later adopted by the Commission in General Order M.V. No. 92. In the opinion of Mr. Downs the adoption of the classification which defines general freight rights did not change or modify what the Commission had meant when it used this term in the initial permit issued to the Prentices. Mr. Downs did not give his opinion as to what the commonly accepted meaning of the term was at that time within the trucking industry."
Arrow contended at the hearing before the commission that the general freight rights granted by permit No. 3703 (now consolidated with permit No. 1748) were not broad enough to authorize the transportation of petroleum in bulk in 1938, and that the 1944 definition was simply the *828 commission's clarification of the meaning and scope of the uncertain term. It further asserted that, since the assignment of the permit to Chinook on October 17, 1956, was subsequent to General Order M.V. No. 92, Chinook's permit was thereby modified.
Chinook contended that its permit authorized the hauling of any commodity, including liquid petroleum products; that the permit granted by the commission was a property right which could not be cancelled, suspended, altered or amended by the commission, except as provided by RCW 81.80.280, and that the commission's General Order M.V. No. 92 did not amend or modify general freight permit No. 1748, as consolidated, because the provisions of the cited statute had not been followed.
After the hearing, the commission rendered the following opinion, findings of fact, conclusions of law, and order:

"OPINION
"We are of the opinion that the evidence is insufficient to sustain the charges against respondent [Chinook]. Consequently we cannot order respondent to cease and desist the hauling of petroleum in bulk. This conclusion is in no way intended to be a guide either to the parties herein or to other carriers who plan to engage in petroleum hauling in the future. The record will not permit the formulation of a basic rule with respect to general freight rights which were issued by the Commission prior to 1944.
"However, the foregoing discussion is not meant to imply that the Commission lacks the power to settle this question in a proper proceeding.

"FINDINGS OF FACT AND CONCLUSIONS OF LAW
"After considering all the evidence of record the Commission makes and enters the following findings of fact. Those portions of the foregoing summary pertaining to these ultimate findings are incorporated herein by reference:
"1. The Commission hereby adopts as its findings of fact the stipulation entered into by the complainants and the respondent as of the date of the hearing, July 29, 1960.
"2. The evidence was insufficient to establish that the respondent herein has operated beyond the scope of its permit authority, in violation of the Commission rules and regulations, by transporting petroleum products in bulk in *829 specialized tank vehicles under its general freight authority.
"3. The respondent should not, on the basis of this record, be ordered to cease and desist from the hauling of the above-named commodities.

"ORDER
"WHEREFORE, IT IS ORDERED That the complaint filed by the above-named complainants herein on the 31st day of March, 1960, against the respondent Chinook Motor Freight, Inc. be, and it is hereby, dismissed.
"DATED at Olympia, Washington, and effective Oct. 25, 1960."
Arrow appealed to the Superior Court for Thurston County, contending that
"The Commission's order is written on a fundamentally wrong basis. The action is one which simply seeks an interpretation of the respondent's common carrier permit by the agency which issued the permit. The commission plainly refused to make a determination  one way or the other.
"The relators submit that in refusing to decide the fundamental issue in this case on the basis of the showing made the Commission has acted unreasonably, arbitrarily and capriciously and not in accordance with the law or its own Rules and Regulations. It has failed to discharge its appointed duty."
The superior court heard the cause and, after entering findings of fact and conclusions of law, decreed:
"That Order M.V. No. 73638 [by which Arrow's complaint was dismissed] issued by the Washington Public Service Commission, now Washington Utilities and Transportation Commission, on October 25, 1960, is proper and valid, and that said order be, and the same is hereby, affirmed."
From the judgment affirming the order of the commission, Arrow has appealed.
Arrow asserts that it sought an interpretation of the scope of the commission's general freight permit from the agency which issued it, and that the commission's refusal to make this determination, "one way or the other," was arbitrary and capricious.
*830 The commission contends that the facts presented by the parties were insufficient for it to make a determination of "what the commonly accepted meaning of the term [general freight] was at that time [1938] within the trucking industry."
[1] A freight permit is a property right. Lee & Eastes v. Public Ser. Comm., 52 Wn. (2d) 701, 328 P. (2d) 700 (1958). The permit in question granted general freight privileges. The general term was not defined or limited in the permit.
Arrow requested the commission to rule, as a matter of law, that the 1944 definition limiting the scope of a general freight permit be applied retroactively for the reason that it had, in fact, been the commission's rule at all times prior thereto.
[2] The former commission may have secretly intended to limit the scope of general freight permits. However, there was no evidence of the extent of the transportation and hauling privileges which had, in fact, been exercised by the trucking industry, prior to 1944, while operating under general freight permits. The commission, therefore, concluded that it had insufficient evidence to determine the question, but reserved its right to make the determination upon a proper record. The commission's order dismissing the complaint was tantamount to a dismissal without prejudice.
[3-5] An administrative agency is a fact-finding tribunal. Reiger v. Seattle, 57 Wn. (2d) 651, 359 P. (2d) 151 (1961); In re Harmon, 52 Wn. (2d) 118, 323 P. (2d) 653 (1958). One who asserts that an administrative permit is being unlawfully exercised by the permittee has the burden of proof. In re Townsend, 54 Wn. (2d) 532, 341 P. (2d) 877 (1959); Jacobs v. Office of Unemployment Compensation & Placement, 27 Wn. (2d) 641, 179 P. (2d) 707 (1947). Arbitrary and capricious action on the part of an administrative agency is wilful and unreasoning action, in disregard of facts and circumstances. Lillions v. Gibbs, 47 Wn. (2d) 629, 289 P. (2d) 203 (1955). Action is not arbitrary *831 and capricious when exercised honestly and upon due consideration of the facts and circumstances. Smith v. Hollenbeck, 48 Wn. (2d) 461, 294 P. (2d) 921 (1956); Lillions v. Gibbs, supra; Straub v. Department of Public Welfare, 31 Wn. (2d) 707, 198 P. (2d) 817 (1948).
Applying these rules to the instant case, our review of the record convinces us that the commission's dismissal of Arrow's complaint, without prejudice, was based upon sound reason and a proper application of the law.
The judgment is affirmed.
FINLEY, C.J., DONWORTH, HUNTER, and HAMILTON, JJ., concur.
January 24, 1963. Petition for rehearing denied.
NOTES
[*] Reported in 376 P. (2d) 433.