[No. 38932.    Department Two.    December 28, 1967.]

LUISI TRUCK LINES, INC., *Respondent*, v. WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, *Appellant.**

*Reported in 435 P.2d 654.

*The Attorney General* and *Robert E. Simpson, Assistant,* for appellant.

*Glenn W. Toomey,* for respondent.

WARD, J.†—In this action the Washington Utilities and Transportation Commission seeks the review of an order of remand entered by the Thurston County Superior Court which directed the commission to make findings of fact with respect to the property rights which the plaintiff, Luisi Truck Lines, Inc., acquired under a permit extension issued in 1939. On November 14, 1939, the Department of Public Service of the State of Washington granted to Eugene Luisi an extension of a common carrier permit No. 4514, originally issued to him on September 16, 1937, to include the hauling of "fruit and vegetables between points in King and Pierce counties and points in Chelan, Yakima, Benton and Kittitas counties." On September 21, 1962, the Washington Utilities and Transportation Commission permitted Eugene Luisi to transfer permit No. 4514 to Luisi Truck Lines, Inc.[1]

The permit issued to Luisi, as amended and extended from time to time, granted him the right to haul within the state of Washington a number of different agricultural commodities, materials and supplies. This appeal, however, concerns only the property rights included within the general terms "fruit and vegetables" granted him in the amendatory order in 1939. Luisi unilaterally construed the permit as authorization to haul fruit and vegetables both in the natural state and as semi-processed and fully-processed agricultural commodities. The commission apparently acquiesced in Luisi's construction of the permit until 1948. Between 1939 and 1948 he was permitted to haul fresh fruit and vegetables, fruit, semi-processed in brine, and frozen

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[1]The term "commission" will refer both to the original grantor of the permit, and to its successor, the Washington Utilities and Transportation Commission. The term "Luisi" will refer both to the original grantee of permit No. 4514 and to its corporate successor.

and canned commodities without objection by the commission. This included peas in lug boxes, pre-cooled with water, and in frozen packages.

In 1948, Mr. Luisi was notified by some undisclosed representative of the state agency that his permit did not grant him the right to haul semi-processed or fully-processed agricultural commodities, and pursuant to such informal directive, Luisi hauled fruit and vegetables in their natural state only until 1954, when he again commenced hauling processed and canned goods and continued until 1961, at which time the commission, in a show cause proceeding, charged him in five counts with having violated and exceeded his permit authority by hauling canned fruit and vegetables. Mr. Luisi appeared in person and by counsel at the show cause proceedings which resulted in the entry of order No. M.V. 76854 on June 7, 1962. Findings of fact Nos. 3 and 4, and the decretal portion of the order are as follows:

3. Respondent is guilty of five violations of Rule 18 (now Rule 21) in that he hauled canned fruits and vegetables on five separate occasions.

4. The following authority permits the applicant to haul unmanufactured and unprocessed fruits and vegetables only:

Fruit and vegetables between points in King and Pierce Counties and points in Chelan, Yakima, Benton and Kittitas Counties.

### Order

Wherefore, It Is Ordered That the respondent be assessed monetary penalties and be served with a statutory notice as provided by RCW 81.80.350.

Dated at Olympia, Washington, and effective June 7, 1962.

Washington Utilities And Transportation Commission.

On June 10, 1964, Luisi Truck Lines, Inc., filed a petition with the commission requesting a hearing to determine the specific authority granted to it in permit No. 4514 and

specifically requested an interpretation which would permit it to haul fruit and vegetables both unmanufactured and also semi-processed, processed and canned. At the hearing held upon this petition, the petitioner presented the history of operations under the permit since 1937 as briefly summarized above. The commission presented no evidence except order No. M.V. 76854. The commission on this record made a finding that the term "fruit and vegetables" as used in Luisi's permit, included the transportation of fresh fruit and vegetables only, that semi-processed or processed fruits and vegetables were excluded from the terms of the permit, and upon this finding denied the petition of Luisi for clarification of the rights which were acquired in 1939 under permit No. 4514.

The evidence presented at the 1964 hearing indicated that there have been technological changes between 1939 and 1964 in the handling of fruit and vegetables from the time they leave the field until they reach the form in which they are put on the market. Some of these developments include what is termed semi-processing and include methods by which the fruit and vegetables, through the use of brine or cooling processes, are kept substantially in their raw and natural state while being transported from Eastern Washington where produced, to processing plants situated in Western Washington.[2] The record brought before this court does not indicate that the commission gave any consideration to this evidence or made any finding thereon. The record shows that the order entered following the 1964 hearing was predicated entirely upon the proceedings brought in 1961 to determine whether Luisi was guilty of violating the state law and the commission's regulations in hauling canned goods. The record indicates that in 1961 the commission produced only the testimony of one of its employees who expressed the opinion that Luisi did not have

[2]See *United States v. Strohmeyer & Arpe Co.*, 167 Fed. 533 (2d Cir. 1909), and *A. Zanmati & Co. v. United States*, 153 Fed. 880 (2d Cir. 1907), to the effect that vegetables do not lose "their natural state" by being barreled in brine so as to preserve their freshness during shipment, nor by being sliced, dried and barreled for shipment.

authority to haul fruit and vegetables in a canned, processed or semi-processed condition. The record does not indicate that any testimony whatsoever was presented with respect to the nature of the property rights which Luisi acquired in 1939 under the general terms "fruit and vegetables" as those trade usages were understood at that time, and counsel in oral argument affirms that that question was not considered by the commission as a basis for its order.

The Superior Court for Thurston County on its review of the record noted that there had never been a determination by the commission with respect to the property rights which Luisi acquired in 1939 and remanded the proceeding to the commission to make a determination and enter findings of fact with respect to the property rights which Luisi acquired in 1939 (incorrectly referred to in the order as 1938). It is from that order that this appeal is taken.

The issue in this case is a narrow one; it deals entirely with the related principles of collateral attack, collateral estoppel and res judicata. It is the commission's position that finding No. 4 in its 1962 order, to the effect that Luisi's permit allowed him to haul only unmanufactured and unprocessed fruit and vegetables, was res judicata and determinative of the issues presented in the 1964 proceedings. It is the plaintiff's position that this finding of fact went beyond the issues of the 1961 proceedings and that res judicata principles do not bar the subsequent determination of those issues which were not necessarily and actually determined and litigated in the prior proceedings. We agree that the plaintiff's construction is correct.

■  It should be noted initially that the common carrier permit which Luisi acquired in 1939 permitting him to haul fruit and vegetables within certain designated areas constituted a property right and that under the laws of this state, RCW 81.80.280, such property right can be canceled, suspended, altered or amended only on account of repeated violations of the laws governing common carriers, the rules and regulations of the commission, or the motor laws of the state of Washington or the United States. The cited statute

recognizes the property owner's right to due process of law before he may be deprived of this property right and requires a notice and hearing. The notice obviously would be insufficient to constitute due process of law unless it directed the permit holder's attention to the fact that an issue to be determined at the hearing would be the cancellation, alteration or amendment of the property right which he had under the terms of his permit. In *Lee & Eastes, Inc. v. Public Serv. Comm'n*, 52 Wn.2d 701, 704, 328 P.2d 700 (1958), we said:

> RCW 81.80.280 requires notice and a hearing before the commission can cancel, suspend, alter or amend any permit; it then authorizes such changes only on the basis of certain violations. Clearly the permits are not subject to the arbitrary whim or caprice of the commission, once they have been issued. In this respect, a permit, once acquired and exercised, becomes a vested right, subject to being divested for cause. See *Taylor-Edwards Warehouse & Transfer Co. v. Department of Public Service* (1945), 22 Wn. (2d) 565, 157 P. (2d) 309. (Footnote omitted.)

The 1961 hearing was held pursuant to a complaint filed by the commission charging that Luisi had violated the law, and the rules and regulations of the commission in that he had hauled canned goods in violation of his permit. RCW 81.04.110 requires that "[a]ll grievances to be inquired into shall be plainly set forth in the complaint." The Administrative Procedure Act, in RCW 34.04.090, prior to the 1967 amendment, stated that "[t]he notice shall state the time, place and issues involved, but if, by reason of the nature of the proceeding, the issues cannot be fully stated in advance of the hearing, . . . they shall be fully stated as soon as practicable, and opportunity shall be afforded all parties to present evidence and argument with respect thereto." The record does not indicate and the commission does not contend that Luisi has ever been given notice of a hearing pursuant to RCW 81.80.280, notifying him that the commission sought to cancel, suspend or alter the property rights which he acquired in 1939 under the

permit granted to him at that time. The 1961 proceedings were held expressly for the purpose of determining whether or not Luisi was guilty of violating the terms and provisions of Rule 18 (now Rule 21) of the Washington Utilities and Transportation Commission on five counts of unauthorized *hauling of canned goods,* and if he were found guilty to impose punishment and penalties under RCW 81.80.350. He was found guilty on all five charges or counts and the decretal portion of the order entered on June 7, 1962, was limited to the imposition of the monetary penalties of $100 on each count as provided in the cited section.

Inasmuch as Luisi did not pursue the right to appeal from the 1962 order, we agree with the commission's position only insofar as it relates to Luisi's right to *haul canned goods* under common carrier permit No. 4514. The construction and interpretation of Luisi's rights under permit No. 4514, as they related to the *hauling of canned goods,* was the only issue necessarily litigated and determined in the 1961 hearing and it was not possible in 1964 to collaterally attack the determination made upon that issue whether the prior determination was made upon a correct or incorrect basis and irrespective of whether or not the commission's determination was made upon sufficient or insufficient evidence.

We cannot, however, accept the commission's position that the 1961 proceedings also resulted in the cancellation of any other property rights which Luisi acquired in 1939 under the permit then issued to him. The only issue necessary for the commission to determine in 1961 was whether Luisi was innocent or guilty of the charge of hauling canned goods without a permit. The record establishes that neither the complaint filed against him in 1961 nor the notice of hearing given to him upon that complaint stated any other issue for determination and the decretal portion of the order entered did not indicate that any other adjudication had been made at the hearing. Luisi was not required to appeal the order entered in order to preserve

property rights which were neither at issue nor properly determined under the pleadings or procedure in the 1961 hearing.

■ In *Henderson v. Bardahl Int'l Corp., ante* p. 109, 118, 431 P.2d 961 (1967), we said:

It is axiomatic that for collateral estoppel by judgment to be applicable, that the facts or issues claimed to be conclusive on the parties in the second action were actually and *necessarily litigated* and determined in the prior action. *Ira v. Columbia Food Co.,* 226 Ore. 566, 360 P.2d 622, 86 A.L.R.2d 1378 (1961); *The Evergreens v. Nunan,* 141 F.2d 927 (2d Cir. 1944), 152 A.L.R. 1187. (Italics ours.)

In *Dolby v. Fisher,* 1 Wn.2d 181, 189, 95 P.2d 369 (1939), we said: "It is also the rule that issues which are not material to the controversy, although determined, do not become *res adjudicata, McGee v. Wineholt,* 23 Wash. 748, 63 Pac. 571; . . . ." See also *East v. Fields,* 42 Wn.2d 924, 259 P.2d 639 (1953), and Restatement, Judgments § 68 at 309 (1942).

■■ Neither the doctrine of res judicata nor collateral estoppel are intended to deny a litigant his day in court. The purpose of both doctrines is only to prevent relitigation of that which has previously been litigated. It is a rule of rest. 2 A. Freeman, Law of Judgments § 625 at 1317-18 (5th ed. 1925). The doctrine of res judicata is intended to prevent relitigation of an entire cause of action and collateral estoppel is intended to prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 429 P.2d 207 (1967). The party asserting either doctrine has the burden of proof to show that the determinative issue was litigated in the former proceedings. "The party asserting collateral estoppel has the burden of showing that issues are identical and that they were determined on the merits in the first proceeding." 2 K. Davis, Administrative Law Treatise § 18.12 at 626 (1958). See also *Rufener v. Scott,* 46 Wn.2d 240, 280 P.2d 253 (1955); Restatement, Judgments § 68 at 306 (1942).

The commission has wholly failed to meet such burden of proof. In the 1961 proceeding the crucial issue was the meaning of the term "fruit and vegetables" as applied to Luisi's right to haul canned goods. This issue was determined adversely to Luisi's contention and he is properly bound by the determination of that crucial issue in that proceeding. In the 1964 proceeding, however, the crucial issue was the meaning which the words "fruit and vegetables" had in 1939 when applied to Luisi's present right to haul fruit and vegetables immersed in brine, in cooled, refrigerated or frozen condition, or in other semi-processed condition. The record is completely devoid of any showing that this issue was ever considered by the commission. In the 1964 proceeding, the commission presented no evidence whatsoever except its order entered in the 1961 proceeding.

■ It is true that appendix "A" at 54 of the Law, Rules and Regulations Governing Motor Freight Carriers Operating Under Permit provides that the commodity descriptions in permits where ambiguity exists, shall be interpreted according to general custom and trade usage of the common carrier motor freight industry and the usual commission administrative practice. However, no such unilateral administrative interpretation of ambiguous terms defining the commodities which a carrier may haul under a permit previously granted, may be made by the commission so as to operate retroactively in depriving the holder of a permit of valuable property rights which he may have acquired at the time the permit was granted. Before this can result there must be a hearing to determine the meaning of ambiguous terms included at the time the permit was issued. That the commission itself recognized this rule is shown in the commission order set out in *State ex rel. Arrow Transp. Co. of Delaware v. Washington Util. & Transp. Comm'n,* 60 Wn.2d 825, 376 P.2d 433 (1962). In this case it appeared that the commission had granted a common carrier permit in 1938 to haul general freight. Under this permit the holder hauled petroleum products and other goods. In 1944 the commission defined the term "general freight" so as to

exclude commodities requiring special equipment. The holder of the 1938 permit contended that by his permit he had acquired a property right which included the right to haul petroleum products and that this property right could be taken from him only in the manner provided in RCW 81.80.280. The commission properly refused to deprive the permit holder of any property rights he acquired in 1938 to haul petroleum products by applying its 1944 definition of "general freight" so as to have any such retroactive effect. The commission did reserve the right to settle the question in a proper proceeding. On appeal this court approved this disposition of the problem by the commission.

A proper proceeding to determine what property rights a permit holder acquired under the general terms of his permit would be either a proceeding initiated by the permit holder or proceedings initiated by the commission itself or other interested parties with proper notice to the permit holder that a determination would be made at a hearing to determine the context and meaning of the general terms contained in his permit *as of the date of its issuance*. No such determination has ever been made in this case. Luisi, in his petition, sought only to have this question determined under the procedure which we approved in *State ex rel. Arrow Transp. Co. of Delaware v. Washington Util. & Transp. Comm'n, supra.* He has that right.

The doctrine of res judicata is based on public policy. Its purpose is to relieve the court from the burden of twice trying the same issue between the same parties. There is nothing, however, in the doctrine or in its historic application which encourages the court to so apply it as to ignore principles of right and justice and the court should be hesitant to so apply the doctrine as to deprive any person of property rights without having his day in court. In *Henderson v. Bardahl Int'l Corp., supra,* we said at 119:

> This would be an $11,069.30 windfall for Henderson by estoppel, and a corresponding loss to Bardahl.
> The Florida Supreme Court has said:
> [T]his Court, among others, has gone so far as to hold that it will not invoke the doctrine of res adjudicata if

to do so would work injustice. The propriety of such ruling can not be questioned when one reflects upon the fact that the primary purpose for which our courts were created is to administer justice. *(Beverly Beach Properties, Inc. v. Nelson,* 68 So.2d 604, 607, 41 A.L.R.2d 1071 (1953)).

Professor Currie says in an article in the California Law Review, heretofore cited in footnote 10,

No legal principle, perhaps least of all the principle of collateral estoppel, should ever be applied to work injustice. . . .

It is generally recognized that the doctrine of res judicata (and this applies to that branch known as collateral estoppel by judgment) is not to be applied so rigidly as to defeat the ends of justice, or to work an injustice. *DiCarlo v. Angeloni,* 3 Cal. 2d 225, 44 P.2d 562, 99 A.L.R. 990 (1935). See 30A Am. Jur. *Judgments* § 325.

Applying these rules to the instant case, we are convinced that the judgment of the Superior Court for Thurston County should be affirmed except as it may apply to the plaintiff's right to haul canned goods under common carrier permit No. 4514. His right to haul canned goods is foreclosed by order No. M.V. 76854, dated June 7, 1962. This matter is remanded to the Washington Utilities and Transportation Commission for further proceedings in accordance with the judgment of the Superior Court for Thurston County except as so modified.

FINLEY, C. J., DONWORTH, HUNTER, and NEILL, JJ., concur.