IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| MARK AVOLIO; JOHN BAKER; MAUREEN DeARMOND; and ANDREW MERKO, | No. 48016-6-II |
|---|---|
| Appellants, | |
| v. | |
| CEDARS GOLF, LLC, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — This case involves a dispute over the effect of restrictive covenants in a residential neighborhood in Battle Ground. In 2014, Cedars Golf LLC (CG) applied to the City of Battle Ground (the City) requesting approval to alter the plat and to subdivide two lots it owned in the neighborhood. The appellants[1] opposed CG's efforts. After the hearing examiner ruled for CG and the superior court affirmed, the appellants chose not to appeal further. Appellants later sued for declaratory judgment and injunctive relief.[2] The superior court granted summary

---

[1] We refer to the plaintiffs/appellants collectively as "appellants" for clarity because the names of each individual are important at various stages in the analysis.

[2] Although the appellants sought both a declaratory judgment and injunctive relief, we frequently refer to the second lawsuit as "the declaratory judgment action" for ease of reference.

judgment for CG and dismissed the declaratory judgment action. The appellants appeal from this dismissal order. We hold that the doctrine of collateral estoppel bars the appellants' declaratory judgment action. We affirm the superior court's summary judgment ruling.

FACTS

I. BACKGROUND

Appellants Mark Avolio, John Baker, Maureen DeArmond, and Andy Merko are property owners in a subdivision known as "The Cedars." The Cedars has been developed and platted over multiple "phases" since the early 1970s. CG owns two lots—lots "1" and "8" in The Cedars "Phase II."

In 1972, developers platted "Phase I," comprising 40 total lots. In March 1973, the declaration of covenants, conditions, and restrictions (CCRs) was recorded. The Cedars Phase II is an upscale 8-lot planned unit development in Battle Ground platted by recording in June 1980. Avolio, DeArmond, and Merko also own lots of real property in Phase II, and Baker owns a lot in Phase I of the development.

In 1973, the CCRs encumbered only the Phase I properties because only Phase I was developed. Among the restrictions in the CCRs was a provision that prohibited any further subdivision of properties to which they applied.

Although the CCRs applied to only Phase I lots, the declaration also contained provisions that envisioned potential future extension of the CCRs to other phases of the development. Specifically, the section titled "*Annexation*" provided that

> [a]dditional residential property and Common Area may be annexed to the Properties by a two-thirds (2/3) vote of the members. Provided, however, that [certain additional properties] may be annexed by the Declarant or assignee without the consent of the members within seven (7) years of the date of this instrument.

2

No. 48016-6-II

Clerk's Papers (CP) at 217.

## II. 2014 SUBDIVISION APPLICATION AND OPPOSITION

In 2014, CG applied to alter The Cedars Phase II subdivision plat and to subdivide lots 1 and 8 of The Cedars Phase II. CG sought to subdivide their 2 lots, which had a "townhomes" designation, into 13 buildable lots for single-family residences. The appellants believed that the CCRs proscribed further subdivision of the lots, and they voiced their opposition to the application. In part, the appellants believed that CG should not be permitted to subdivide its lots because the "face of the plat of The Cedars Phase II incorporates by reference the [CCRs]." CP at 102. As support for this contention, the appellants rely on a notation on the Phase II plat document that provides,

--Nature Trails--
The Cedar Pacific Properties, Inc., in recording this plat of the "Cedars Phase-II" has designated certain areas of land as Nature Trails intended for use by the Homeowners in "The Cedars-Phase II" for recreation and other related activities. The designated areas are not dedicated for use by the general public but are dedicated for the common use and enjoyment of the Homeowners of "The Cedars-Phase II" as more fully provided for in the Declaration of Covenants, Conditions and Restrictions applicable to "The Cedars-Phase I" dated February 23, 2973 [sic], and is incorporated in, and made a part of this plat.

CP at 68-69.

Because the appellants believed that the CCRs precluded any further subdivision of CG's lots, they also believed that RCW 58.17.215, which governs the procedure required for subdivision alterations, required that CG obtain the agreement of all parties subject to the CCRs to accomplish the proposed alteration of the subdivision or portion thereof.

3

A. Public Hearing

A hearing examiner held a public hearing to consider CG's application, at which each of the appellants participated. An attorney represented Avolio, DeArmond, and Merko and sent letters detailing their opposition to community development representatives before the hearing. The attorney also appeared at the public hearing on behalf of his clients and urged the hearing examiner to deny CG's applications for the reasons mentioned above. Baker, DeArmond, and Merko also submitted e-mails or letters expressly requesting to be parties of record and to be notified of decisions and appeal rights relating to CG's application.

B. Hearing Examiner Final Order

After hearing testimony and considering accompanying exhibits, the hearing examiner rendered a final decision approving CG's application. The hearing examiner memorialized his decision in detailed findings, including, relevant to this appeal:

3. The examiner finds that the plat alteration application complies with RCW 58.17.215.

a. The applicant is requesting alteration of the plat to remove the "townhomes" designation on Lots 1 and 8. Lots 1 and 8 of Cedars Phase II are the only portion of the subdivision proposed to be altered. Therefore RCW 58.17.215 only requires the signature of the majority of persons with an ownership interest in Lots 1 and 8 of Cedars Phase II. The further division of these platted lots is not a "plat alteration" subject to RCW 58.17.215.

b. The proposed subdivision will not result in violation of a covenant applicable to The Cedars Phase II subdivision. As discussed in Exhibit 31, the CC&Rs for "The Cedars" dated February 23, 1973 were never adopted by The Cedars Phase II subdivision. There is no substantial evidence to the contrary.

i. The CC&Rs authorize "the Declarant," the original developer of The Cedars, to annex certain additional properties without the consent of the members. . . . However such annexation must occur within seven years form [sic] the date of the CC&Rs. The CC&Rs were executed on March 2, 1973. The Cedars Phase II subdivision was platted June 6, 1980, more than seven years after the CC&Rs were signed. Therefore the Declarant had no authority to unilaterally include The Cedars Phase II subdivision in the CC&Rs.

     ii. The CC&Rs require a two-thirds majority vote to annex additional property into the CC&Rs. . . . There is no evidence that a vote to include The Cedars Phase II subdivision ever occurred.

     iii. The Cedars Phase II subdivision plat did not adopt or incorporate by reference all of the CC&Rs applicable to The Cedars Phase I. The second plat note on the face of The Cedars Phase II subdivision plat is titled "Nature Trails." The text of the plat note discusses the ownership and use of the nature trails within The Cedars Phase II subdivision site. By its terms, The Cedars Phase II subdivision plat note only incorporates those portions of The Cedars Phase I CC&Rs regulating the use and enjoyment of trails. There is no evidence that The Cedars Phase II subdivision plat was intended to adopt and incorporate all of The Cedars Phase I CC&Rs.

CP at 257.

## C. LUPA PETITION

Avolio filed a petition under the Land Use Petition Act (LUPA), ch. 36.70C RCW, in the superior court challenging the hearing examiner's final order. Neither Baker, DeArmond, nor Merko joined in this petition. In his petition, Avolio alleged that the City and the hearing examiner erred by concluding that CG's application met all requirements of a plat alteration under RCW 58.17.215. The superior court entered a judgment affirming the hearing examiner's decision. The superior court agreed that the hearing examiner correctly found that the CCRs were not applicable to Phase II and therefore CG's proposed subdivision would not constitute a violation of the same. No party appealed the superior court's ruling.

## III. DECLARATORY JUDGMENT ACTION AND SUMMARY JUDGMENT

Some months later, the original four parties sued in superior court. This time, the parties sought a declaratory judgment that the CCRs prohibit "re-subdivision" of any lots in The Cedars, including CG's. CP at 6. They also asked the superior court to permanently enjoin CG and its successors from further subdividing its property. In response, CG moved for summary judgment. The appellants then moved for cross summary judgment.

The superior court granted summary judgment in CG's favor. The superior court dismissed the complaint with prejudice, ruling that the doctrines of res judicata and collateral estoppel precluded Avolio from bringing a subsequent action and that the remaining three parties were collaterally estopped from doing so. The appellants appeal the dismissal order.

ANALYSIS

I. STANDARD OF REVIEW – SUMMARY JUDGMENT

We review summary judgment orders de novo and view the facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Superior courts properly grant summary judgment where the pleadings and affidavits show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

II. COLLATERAL ESTOPPEL

The appellants argue on several grounds that the doctrine of collateral estoppel should not preclude their subsequent declaratory judgment action. We reject their claims.[3]

A. STANDARD OF REVIEW AND RULES OF LAW: COLLATERAL ESTOPPEL

We review de novo whether collateral estoppel applies to bar relitigation of an issue. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). The doctrine of collateral estoppel prevents the endless relitigation of issues already litigated by the parties and decided by a competent tribunal. *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951

---

[3] We do not reach CG's jurisdictional argument because CG did not raise it before the trial court, and because we affirm the trial court on the basis of collateral estoppel, we need not reach it.

P.2d 782 (1998). "Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." *Reninger*, 134 Wn.2d at 449.

Collateral estoppel, or issue preclusion, bars relitigation of the same issue in a subsequent action when that issue has been litigated and necessarily and finally determined in the earlier proceeding. *Christensen*, 152 Wn.2d at 306-07. The inquiry focuses on whether "the party against whom the doctrine is asserted . . . had a full and fair opportunity to litigate the issue in the earlier proceeding." *Christensen*, 152 Wn.2d at 307. Collateral estoppel is distinguished from claim preclusion "'in that, instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of *issues* between the parties, even though a different claim or cause of action is asserted.'" *Christensen*, 152 Wn.2d at 306 (internal quotation marks omitted) (quoting *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)).

The party seeking the doctrine's application must show that "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied." *Christensen*, 152 Wn.2d at 307.

### B. COLLATERAL ESTOPPEL AS APPLIED TO ADMINISTRATIVE DECISIONS

Initially, Avolio contends that his declaratory judgment action should not be precluded by collateral estoppel because the hearing examiner did not make a "factual decision" while acting within its "competence." Br. of Appellant at 10. This requirement applies when determining whether an administrative ruling should be given collateral estoppel effect. *Reninger*, 134 Wn.2d

at 450. The competence requirement does not apply to our determination of whether the superior court's decision estops Avolio from bringing the declaratory judgment action. And we hold that the hearing examiner made a factual determination within its competence so that the hearing examiner's decision may preclude Baker, DeArmond, and Merko from joining in the declaratory judgment action.

1.    COMPETENCE REQUIREMENT

The requirement that a hearing examiner make a factual determination within its competence before the hearing examiner's ruling can collaterally estop a party is at issue when courts are asked to determine whether to apply only collateral estoppel to the findings of an administrative body. When faced with that question, our courts have employed three additional criteria: (1) whether the agency acting within its competence made a factual decision, (2) agency and court procedural differences, and (3) policy considerations. *Reninger*, 134 Wn.2d at 450 (quoting *Stevedoring Servs. of Am., Inc. v. Eggert*, 129 Wn.2d 17, 40, 914 P.2d 737 (1996)).

2.    AVOLIO

In each case that the appellants cite to support their assertion that the "competence" requirement should apply, the parties either opted not to appeal to the superior court following an administrative body's decision or sought to appeal the administrative decision but failed to follow the necessary procedure. *See Reninger*, 134 Wn.2d at 440, 442 n.1 (parties attempted to appeal a state Personnel Appeals Board determination but failed to file timely notice of appeal); *Stevedoring Servs. of Am., Inc.*, 129 Wn.2d at 21 (neither party appealed administrative law judge order); *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987) (party initially appealed Civil Service Commission decision to superior court, but voluntarily dismissed).

These cases all stand for the proposition that these additional criteria are considered where the immediately prior adjudication took place before only an administrative body. But relevant to Avolio, the prior adjudication at issue was before the superior court, not the hearing examiner. Avolio appealed the hearing examiner's decision to the superior court, and the superior court affirmed. The adjudication that occurred immediately prior to Avolio's filing of the declaratory judgment action was not before an administrative body but instead was before the superior court. Accordingly, we conclude it is the superior court's decision, and not the administrative decision, that is relevant to determine whether collateral estoppel bars Avolio from bringing the declaratory judgment action. Thus, we hold that whether the hearing examiner made a factual determination while acting within its competence is immaterial to our holding relating to Avolio.

2.     BAKER, DEARMOND, AND MARKO

The appellants raise the hearing examiner's "competence" to decide the issues involved as part of CG's original subdivision application.[4] The appellants appear to assert that the hearing examiner had no authority to make certain findings regarding the CCRs because it "lacks competence to resolve issues of law inherent in covenant interpretation and enforcement." Br. of

---

[4] The appellants also contend that their declaratory judgment action should not be barred because part of the hearing examiner's decision was surplusage. They argue that because this surplusage was not material to the controversy it does not become res judicata. *See Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n*, 72 Wn.2d 887, 894, 435 P.2d 654 (1967). In particular, the appellants rely on the hearing examiner's statement that CG's proposed subdivision was "not a 'plat alteration' subject to RCW 58.17.215." CP at 54. The appellants contend that if further subdivision is not a plat alteration under the statute, the hearing examiner did not need to further interpret the CCRs. Although the appellants are correct that there is such a rule, the hearing examiner clearly made a scrivener's error. Elsewhere in its findings, the hearing examiner stated specifically that the plat alteration application complies with RCW 58.17.215.

No. 48016-6-II

Appellant at 11. Therefore, according to the appellants, the hearing examiner's decision should have no preclusive effect. We reject the appellants' contentions.

The authority to grant or deny an application for subdivision alteration includes a determination of whether the CCRs applied to the property.

RCW 58.17.215 provides,

When any person is interested in the alteration of any subdivision or the altering of any portion thereof, except as provided in RCW 58.17.040(6), that person shall submit an application to request the alteration to the legislative authority of the city, town, or county where the subdivision is located. The application shall contain the signatures of the majority of those persons having an ownership interest of lots, tracts, parcels, sites, or divisions in the subject subdivision or portion to be altered. If the subdivision is subject to restrictive covenants which were filed at the time of the approval of the subdivision, and the application for alteration would result in the violation of a covenant, the application shall contain an agreement signed by all parties subject to the covenants providing that the parties agree to terminate or alter the relevant covenants to accomplish the purpose of the alteration of the subdivision or portion thereof.

Importantly, RCW 58.17.217 states that any hearing required by RCW 58.17.215 may be administered by a hearing examiner as provided in RCW 58.17.330.[5] At the local level, the Battle Ground municipal code (BMC) sets forth its own guidelines regarding what subjects and what kinds of matters a hearing examiner may decide. These include all "Type III" land use actions that are site specific. BMC 17.200.040. Subdivision applications and plat alterations are considered "Type III" applications. BMC 17.200.035. In the procedure it describes for the alteration of approved subdivisions, the BMC specifies that where a public hearing is requested or required for

---

[5] RCW 58.17.330 simply explains the procedures required of the hearing examiner system, including that the decision be in writing and that there be findings and conclusions based on the record to support the decision.

10

an alteration proposal, the application shall be referred to the hearing examiner for consideration. BMC 16.135.020.

Having reviewed this authority, both state and local law may confer the authority to decide matters of this nature to hearing examiners in some instances. This is one such instance. The argument that the hearing examiner here did not have the authority to determine matters specifically related to the application of the CCRs is unavailing for at least two reasons.

First, to the extent that the appellants aver that the hearing examiner here could not "interpret or enforce" CCRs, this argument fails because the hearing examiner did neither. Br. of Appellant at 30. Instead, he found that the CCRs did not apply to Phase II and, therefore, the procedural requirements of RCW 58.17.215 had been satisfied. Second, even if the hearing examiner's determination under RCW 58.17.215 could be considered "interpretation" of a covenant, it would be illogical to conclude that a hearing examiner may deny or approve applications for subdivision alterations under RCW 58.17.215 without considering the very submission criteria that the statute requires. We hold that the hearing examiner was within its authority to consider whether the CCRs applied as part of its decision to approve CG's application.

We reject the appellants' arguments that the hearing examiner lacked competence to decide the issues in appellants' subdivision application and hold that the hearing examiner's decision may preclude Baker, DeArmond, and Marko from bringing the declaratory judgment action. Accordingly, we turn to the application of collateral estoppel's four factors to Avolio, Baker, DeArmond, and Marko.

## C. COLLATERAL ESTOPPEL'S FOUR FACTORS

First, collateral estoppel applies only if the issue decided in the earlier proceedings is identical to the issue presented in the later proceeding and "necessarily . . . determined." *Christensen*, 152 Wn.2d at 307. Here, the issue before the superior court in the LUPA petition and before the hearing examiner was whether CG should be prohibited from further subdividing its lots by operation of the CCRs. In their subsequent declaratory judgment action, the appellants again asked the superior court to declare that the CCRs preclude "re-subdivid[ing]" CG's lots and permanently enjoin them from doing so. CP at 6. The issue was again whether the CCRs impeded CG's proposed subdivision. The issue was the same in the LUPA action and before the hearing examiner as in the declaratory judgment action.

Further, appellants argue that the superior court apparently made superfluous findings such that the issue was not "necessarily . . . determined." Br. of Appellant at 9 (quoting *Christensen*, 152 Wn.2d at 307). This argument is unavailing. RCW 58.17.215 requires that any person seeking an alteration of any subdivision shall submit an application along with the signatures of the majority of owners of property subject to the proposed alteration. And if the subdivision is subject to restrictive covenants, then the application shall contain an agreement signed by all parties subject to the covenants that the parties agree to terminate or alter the relevant covenants. RCW 58.17.215. The superior court agreed that the hearing examiner correctly found that the CCRs were not applicable to Phase II and therefore CG's proposed subdivision would not constitute a violation of the same. The superior court made findings to satisfy RCW 58.17.215's requirements, and thus the superior court's findings were necessary to its decision.

Second, the prior proceeding must end with a judgment on the merits. *Christensen*, 152 Wn.2d at 307. There can be little doubt this factor is established under the circumstances. The hearing examiner rendered a final decision, which neither Baker, DeArmond, nor Marko appealed. And the superior court affirmed the hearing examiner's decision in a final order, which no party appealed.

Third, the parties against whom collateral estoppel is asserted must have been parties to, or in privity with a party to, the earlier proceeding. *Christensen*, 152 Wn.2d at 307. Here, Avolio was a party to the appeal, and each appellant was also a party to the administrative proceeding before the hearing examiner. Avolio, Merko, and DeArmond hired an attorney to represent them before the hearing examiner. Through their attorney, they submitted letters outlining their position before the hearing took place, and the attorney testified on their behalf. Baker, DeArmond, and Merko submitted e-mails or letters expressly requesting to be parties of record and to be notified of decisions and appeal rights relating to CG's application. Avolio then filed the LUPA petition in the superior court. The third factor is established.

Fourth, application of collateral estoppel may not work an injustice on a party against whom it is applied. *Christensen*, 152 Wn.2d at 307. The party must have had a full and fair opportunity to litigate an issue before collateral estoppel will apply. *Christensen*, 152 Wn.2d at 307. The injustice component is regularly concerned with procedural, not substantive, irregularity. *Christensen*, 152 Wn.2d at 309. Injustice can arise when the disparity of relief is so great that a party would be unlikely to have vigorously litigated the crucial issues in the first forum such that it would be unfair to preclude relitigation of the issues in a second forum. *Reninger*, 134 Wn.2d at 453.

Here, the appellants had a full and fair opportunity to litigate the issue before the hearing examiner and on appeal to the superior court and, importantly, they were represented by counsel. Procedurally, collateral estoppel here does not work an injustice. Appellants claim that collateral estoppel works an injustice based on "disparity of relief." Br. of Appellant at 24. However, there is no such disparity of relief despite the appellants' suggestion otherwise. The relief would have been identical had the appellants succeeded before the hearing examiner, in the superior court LUPA petition, or in the superior court declaratory judgment action. The relief sought was a prohibition on CG's ability to subdivide their properties in one of two ways. Either the hearing examiner would have declined to approve CG's application (or the superior court would have reversed and vacated the approval) in the first proceeding or the superior court would have enjoined CG from doing so in the later proceeding. The appellants did not request damages or any form of relief otherwise.

For the foregoing reasons, we hold that the doctrine of collateral estoppel bars the appellants from bringing a subsequent claim to relitigate issues previously determined. Therefore, the superior court properly granted summary judgment.

### D. PUBLIC POLICY CONSIDERATIONS

Avolio contends that public policy considerations should also compel this court to hold that collateral estoppel does not apply on the facts of this case. Again, we reject this argument.

The appellants' argument in this respect is twofold. First, they again raise the notion of "disparity in relief." Br. of Appellant at 25. However, any relief would have been identical. The appellants have made no showing that any disparity of requested relief should preclude the application of collateral estoppel to their subsequent complaint.

14

Second, they argue that policy considerations should prohibit the application of collateral estoppel because if collateral estoppel applies, parties who oppose local land use applications would be required to forgo certain rights and forced to make an unfair choice of remedies.

This second argument is equally unpersuasive—that would not be the effect of our holding even if we agree with CG. We do not hold that participating in a public hearing before a hearing examiner means that no future lawsuit could be filed to challenge either that decision itself or any subsequent alteration of the status quo as it pertains to a land use decision. Rather, we hold that a party who either declines to challenge a hearing examiner's final order or who challenges a hearing examiner's decision by way of a LUPA petition and then declines to exhaust its right to appeal beyond the superior court may not then bring an entirely separate suit seeking a second determination of the same rights and remedies at issue during the earlier proceeding. This entirely follows the recognized policies underlying collateral estoppel.

The appellants appear to assert that it is unfair to require a party who wishes to challenge a land use decision to do so by seeking an administrative remedy only, rather than to have the choice to proceed by filing other causes of action in superior court. But such an argument must also fail because LUPA grants superior courts exclusive jurisdiction for challenges to land use decisions in Washington. RCW 36.70C.030(1)(a)(ii). We decline to hold that public policy mandates that collateral estoppel not be applied to this case.[6]

---

[6] Each party also raises issues pertaining to their respective motions for summary judgment and the merits of the underlying claims. For instance, the appellants contend that the CCRs are unambiguous in that they clearly apply to all property within The Cedars. We decline to address these issues. First, we need not address these matters because we hold that the superior court properly dismissed this action. Second, the superior court made no ruling regarding these issues. Third, the record is insufficiently developed to address the merits even if we felt compelled to do so.

III.  ATTORNEY FEES

CG argues that it is entitled to attorney fees on appeal under both RCW 4.84.370(1) and RAP 18.9.  We disagree.

RCW 4.84.370(1) provides,

[R]easonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision.

RAP 18.9(a) authorizes an appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court."  Such compensatory damages may include attorney fees.  *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009) (quoting *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008)).

We decline to award attorney fees under either of the cited provisions.  First, we decline to award fees under RCW 4.84.370(1) because this is not an appeal from a land use decision.  And although the appellants' arguments are unpersuasive, their appeal is not one that presents no debatable issues upon which reasonable minds might differ or that is so devoid of merit that there was no possibility of reversal.  *Kinney*, 150 Wn. App. at 195 (quoting *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)).  We decline to award fees on the basis of RAP 18.9.

No. 48016-6-II

We affirm the superior court's summary judgment ruling.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.