[No. 10665-5-II.   Division Two.   November 2, 1988.]

TODD PACIFIC SHIPYARDS CORPORATION, ET AL, *Appellants,* v. CHARLES GIBSON, *Respondent.*

*Raymond H. Warns, Jr.,* and *Witherspoon, Kelley, Davenport & Toole, P.S.,* for appellants.

*David B. Condon* and *Welch & Condon,* for respondent.

WORSWICK, J.—Charles Gibson made a claim for benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.,* against Todd Pacific Shipyards Corporation. Todd did not controvert the claim, but paid benefits until July of 1985, when an administrative law judge ruled that Gibson was not entitled to further benefits, and that he had reached maximum medical improvement on or before January 15, 1982. Gibson refused Todd's demand that he repay benefits paid after the January 1982 date, whereupon Todd sued him in superior court on various common law theories, claiming that he had been overpaid more than $66,000. Todd now appeals a summary judgment dismissing its case.

We are asked to decide whether an employer who, without controverting a disability claim, pays disability benefits under the act may recover the alleged overpayment in a state court. Gibson contends that an employer may pursue overpayments only through procedures set forth in the act, and, even then, that the only remedy is deduction from future payments, pursuant to 33 U.S.C. § 914(j). Assuming without deciding that an independent action may be brought in state court, we hold that the employer must first litigate its right to recover through the procedures provided by the act. Inasmuch as Todd did not, we affirm.

The act provides compensation to workers injured while working on navigable waters or upon certain adjoining areas. 33 U.S.C. § 903.[1] When an employee files a claim, the employer must pay compensation promptly and without an award, unless the employer elects to controvert the

---

[1]33 U.S.C. § 903(a) provides: "Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."

claim.[2] When this happens, or when any other dispute regarding the claim arises, a commissioner of the Office of Worker's Compensation Programs, United States Department of Labor, conducts any investigation believed necessary and orders a hearing on the application of any interested party. The hearing is conducted by an administrative law judge who has the power of decision. 33 U.S.C. § 919(d); 5 U.S.C. § 554; *Presley v. Tinsley Maintenance Serv.,* 529 F.2d 433, 436 (5th Cir. 1976).[3] Appeals are to the Benefits Review Board. 33 U.S.C. § 921(b).[4] A party may petition for review of a final order of the Board to the

---

[2]33 U.S.C. § 914(a) provides: "Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer."

[3]Under the law as originally enacted, the claimant and employer presented evidence to a deputy commissioner appointed by the United States Employee's Compensation Commission. Pub. L. No. 98–426, 98 Stat. 1639 (1984). The deputy commissioner had full power and authority to hear and determine all questions concerning the claim. Longshoremen's and Harbor Workers' Compensation Act § 19(a), 44 Stat. 1435 (1927). In 1972, the act was amended to provide that hearings were to be conducted under section 554 of Title 5, the administrative procedure act, by a hearing examiner qualified under section 3105 of Title 5. Pub. L. No. 92–576, 86 Stat. 1251 (1972). The hearings examiners had the same powers, duties, and responsibilities as those vested in the deputy commissioners on October 27, 1972. Pub. L. No. 92–576, 86 Stat. 1251 (1972). In 1978, the act was amended again to substitute the term "administrative law judges" qualified under section 3105 of Title 5 for the term "hearings examiners." The administrative law judges have the same powers, duties and responsibilities as those vested in the deputy commissioners on October 27, 1972. Pub. L. No. 95–251, 92 Stat. 183 (1978).

33 U.S.C. § 919(d) states:

Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with the provisions of section 554 of title 5. Any such hearing shall be conducted by a [*sic*] administrative law judge qualified under section 3105 of that title. All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges.

[4]33 U.S.C. § 921(b)(3) states in relevant part: "The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof."

United States Court of Appeals for the circuit in which the injury occurred. 33 U.S.C. § 921(c).[5] Only after a final order of the Board does any court acquire appellate jurisdiction. *Youghiogheny & Ohio Coal Co. v. Baker,* 815 F.2d 422, 424 (6th Cir. 1987). The Board's orders are reviewable only by the United States Court of Appeals. *Conners v. Tremont Mining Co.,* 835 F.2d 1028, 1030 (3d Cir. 1987).

Todd contends that because the act is silent concerning claims of this kind, Todd should be allowed to pursue its common law remedies in Washington courts. We disagree. The act is not silent. It provides a complete scheme for administrative determination of disability issues, and it places within that process *"all* questions in respect of such claim" for disability. (Italics ours.) 33 U.S.C. § 919(a). Thus, one who paid nonoccupational insurance benefits for a work related condition was permitted to intervene in proceedings under the act for purposes of having the right to reimbursement adjudicated. *Aetna Life Ins. Co. v. Harris,* 578 F.2d 52 (3d Cir. 1978).

■■ Because the act empowers the administrative law judge, and the Board on appeal, to adjudicate the issue of overpayment, we hold that the doctrine of primary jurisdiction requires that one claiming reimbursement adjudicate the right thereto through the administrative process provided by the act before bringing a lawsuit in any court. That doctrine applies where, even though a claim originally may be cognizable in the courts, the enforcement of the claim requires the resolution of issues within the particular competence of an administrative body. *United States v. Western Pac. R.R.,* 352 U.S. 59, 1 L. Ed. 2d 126, 77 S. Ct. 161, 165 (1956). Use of the doctrine is especially appropriate where, as here, fundamental determinations upon which

[5]33 U.S.C. § 921(c) provides in part: "Any person adversely affected . . . by a *final* order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . ." (Italics ours.)

liability must rest can best be made by those with specialized expert knowledge. *See Ellison v. Rayonier, Inc.*, 156 F. Supp. 214 (W.D. Wash. 1957).

We need not—and we do not—decide whether Gibson is correct in contending that Todd would never have a remedy outside of the act. That contention is based on the act's silence concerning other remedies, a less than satisfactory basis for decision. What we do decide, however, is that whether or not an action lies in a court of this state, it cannot be brought until the validity of the claim upon which it is based has been adjudicated in proceedings under the act.[6]

Affirmed.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied December 7, 1988.

---

[6]The tenor of Todd's argument suggests that it thinks that the administrative law judge decided that Gibson was not *disabled* after January 1982. This is not so. The judge determined only that Gibson's *condition* was medically stable as of that date and that no surgery was required. In fact, the decision reads, in part:

"The claimant has received all of the compensation to which he is entitled and accordingly his request for *additional* compensation is hereby denied." (Italics ours.) The decision was dated July 18, 1985. Gibson received no compensation thereafter.