914 P.2d 737 (1996)
129 Wash.2d 17
STEVEDORING SERVICES OF AMERICA, INC., formerly Seattle Stevedore Company, a California corporation, Petitioner/Cross-Respondent,
v.
Edward M. EGGERT and Jodi Eggert, husband and wife, and the marital community composed thereof, Respondents/Cross-Petitioners.
No. 62695-2.
Supreme Court of Washington, En Banc.
April 18, 1996.
*739 Jay A. Williamson, Seattle, Thomas S. Williamson, Jr., Carol A. De Deo, Joshua T. Gillelan, II, Washington, DC, Amicus Curiae, for Director Office of Workers Compensation.
Williams, Kastner & Gibbs, Richard M. Slagle, Mary H. Spillane, Seattle, for Petitioner.
James R. Walsh, Lynnwood, Craig R. Elkins, Bellevue, for Respondents.
*738 MADSEN, Justice.
At issue is a claim for overpayment made under the Federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 918 (LHWCA). The Court of Appeals held that the LHWCA preempts state law remedies for overpayment. We reverse.

FACTS
In February 1980, Respondent Edward Eggert (Eggert), a longshoreman in the employ of Appellant, Stevedoring Services of America (SSA), filed a claim for benefits under LHWCA for workplace injuries sustained on January 26, 1980. On March 28, 1980, Eggert was released to return to work. He did not do so, however, because a nonwork-related auto injury occurring on March 30, 1980, resulted in Eggert being placed in a full body cast. Eggert recovered from that accident and was again released to return to work when he suffered another nonwork-related accident (he fell from a pickup truck sustaining head, shoulder, and back injuries). Eggert did return to work on July 15, 1980, but stopped working on December 6, 1980, because of back pain. SSA paid Eggert benefits from January 26, 1980, until April 6, 1980. It then ceased payments and disputed Eggert's right to any further compensation. Eggert's claim was heard by an administrative law judge (ALJ) pursuant to 33 U.S.C. § 919(d). On July 14, 1981, SSA was ordered to pay benefits from December 6, 1980, until Eggert could complete retraining and a determination regarding permanent disability could be made.
SSA complied with the order to pay benefits but appealed to the Benefits Review Board (BRB). The Board reversed, concluding that the ALJ had erred by applying the "last employer doctrine" to a traumatic injury case. Clerk's Papers vol. II, at 118. On July 12, 1985, the BRB vacated the order and remanded for the ALJ to make a proper allocation of liability, stating that the "[e]mployer is liable for claimant's entire disability only if the subsequent non work-related injuries caused no disability or were the natural and unavoidable result of the prior work-related injuries." Clerk's Papers vol. II, at 119.
On remand, the ALJ found that SSA was liable for benefits from January 26, 1980, through April 15, 1980. At that point, SSA had been paying benefits for seven years. The ALJ gave SSA credit for those payments. SSA also requested an award of costs, under 33 U.S.C. § 926, which provides that if "a claim or order has been instituted or continued without reasonable ground, the costs of such proceedings shall be assessed against the party who has so instituted or continued such proceedings." Clerk's Papers vol. II, at 129. The ALJ found that Eggert had misrepresented his income and his condition, and had lied during testimony regarding whether he performed work while receiving benefits. The ALJ declined to award costs, however, because he concluded that there *740 was some legitimacy to Eggert's claim for benefits and that it would be impossible to segregate costs which related to the legitimate portions of Eggert's claims.
Neither side appealed the order. SSA filed the present action in Snohomish County Superior Court, seeking recoupment of overpayment in the sum of $106,464.73. SSA asserted claims of unjust enrichment, conversion, fraud, and intentional or negligent misrepresentation. It also claimed an implied right to recover overpayment under the LHWCA. Contemporaneously, SSA filed a complaint in federal district court to recover these same overpayments. The Snohomish County action was continued pending the outcome in federal court.
Both SSA and Eggert moved for summary judgment in federal court. The district court concluded that SSA's claim was essentially an action to enforce an administrative order, thus conferring federal question jurisdiction pursuant to 28 U.S.C. § 1331. The court also found that nothing in the LHWCA precluded reimbursement for overpayment and found that construing the act to find such an implied remedy reflected the drafters' intent. The court entered an order against Eggert requiring him to repay $96,651.55.
Eggert appealed to the Ninth Circuit Court of Appeals, which reversed, finding no federal question jurisdiction. Stevedoring Services of Am., Inc. v. Eggert, 953 F.2d 552 (9th Cir.), cert. denied, 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992) (Eggert I). The Court of Appeals noted that the ALJ order on which the district court based, in part, its claim of jurisdiction provided only for a credit to SSA for payments already made, not for repayment to SSA. Since the district court was not enforcing an administrative order for repayment, it lacked jurisdiction under the Act. Id. at 555. Further, the Ninth Circuit rejected the district court's assertion that a repayment remedy is implied in the LHWCA. It reviewed a number of the Act's provisions relating to recovery of overpayment and concluded that "Congress did not intend to permit an employer a federal cause of action against a claimant for repayment of alleged overpayments of compensation." Eggert I, 953 F.2d at 557. The court vacated the summary judgment order awarding reimbursement of overpayment. Id. at 558.
The appellate court also dismissed SSA's state common law claims without prejudice, finding an insufficient connection between SSA's federal claims and its state common law claims for recoupment to justify the exercise of pendant jurisdiction. Id. at 558. The court stated that "[a]lthough the question is not before us, it appears likely that Congress has expressed its intent to preempt state common law claims by employers against claimants for repayment of alleged overpayments of disability compensation." Id. at 558 n. 7.
Following the decision by the Ninth Circuit, both parties moved for summary judgment in Snohomish County Superior Court. The court entered judgment in favor of SSA on its claims of unjust enrichment, conversion and fraud, and intentional or negligent misrepresentation for $96,651.55, plus prejudgment interest.[1] Eggert appealed directly to this court, which transferred the matter to the Court of Appeals, Division One. The Court of Appeals reversed the trial court, holding that the LHWCA preempts state law because Congress intended to occupy the field of payments between the employer and employee in claims brought pursuant to the Act. Stevedoring Services of Am., Inc. v. Eggert, 76 Wash.App. 614, 621, 886 P.2d 1174, review granted, 126 Wash.2d 1022, 896 P.2d 64 (1995) (Eggert II). This court granted discretionary review.

I
The primary issue presented in this case is whether the LHWCA preempts state law remedies for the recovery of overpayments made under the Act.
Federal preemption is a defense which may be asserted to actions filed in state court. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13, 16, 103 S.Ct. 2841, 2848, 2849-50, 77 L.Ed.2d 420 (1983). Preemption may occur if (1)
*741 Congress passes a statute that expressly preempts state law, (2) Congress occupies the entire field of regulation, or (3) state law conflicts with federal law, making compliance with both an impossibility or state law presents an obstacle to the accomplishment of the federal purpose. Progressive Animal Welfare Soc'y v. University of Washington, 125 Wash.2d 243, 265, 884 P.2d 592 (1994).
The doctrine of preemption is based in the supremacy clause of the United States Constitution. Goodwin v. Bacon, 127 Wash.2d 50, 57, 896 P.2d 673 (1995). "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." Building & Constr. Trades Council v. Associated Builders & Contractors, 507 U.S. 218, 223-24, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993) (quoting Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981)). There is a strong presumption against preemption and "[s]tate laws are not superseded by federal law unless that is the clear and manifest purpose of Congress." Id. at 265, 884 P.2d 592 (quoting Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 327, 858 P.2d 1054 (1993)).
The goal in a preemption analysis is to determine congressional intent. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Id. at 516, 112 S.Ct. at 2617 (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, reh'g denied, 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977)).
(A) Express Preemption
Before the Court of Appeals, and in this court, SSA argues that §§ 905(a) and 933(i) of the LHWCA are express preemption clauses. Section 905(a) is entitled "Exclusiveness of liability" and provides in part that:
The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee ... at law or in admiralty....
Section 933(i) is entitled "Right to compensation as exclusive remedy" and provides in part that:
The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured....
These clauses, SAA argues, limit the employee's claims to those provided for by the LHWCA, but do not preempt any employer claims against the employee. Further, SSA asserts that when legislation contains express preemption clauses, the courts are limited by the express language of such provisions and may not find implied preemption. To support the later proposition, SSA relies on Cipollone in which the Supreme Court stated:
When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," Malone v. White Motor Corp., 435 U.S. 497, 505 [, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978),] `there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation. California Federal Savings & Loan Assn. v. Guerra, 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987) (opinion of Marshall, J.).... Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.
Cipollone, 505 U.S. at 517, 112 S.Ct. at 2618.
The Court of Appeals rejected SSA's argument, concluding that the LHWCA does not contain express preemption language. The court found that although §§ 905(a) and 933(i) have preemptive effect they are not preemption clauses. We agree.
The language in §§ 905(a) and 933(i) does not give the kind of clear congressional statement that Cipollone discusses. With respect to the 1965 Act considered in Cipollone, Congress declared that one purpose of that act *742 was to protect the "national economy from the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations." Id. at 514, 112 S.Ct. at 2616. The Act also contained a section captioned "Preemption" and provided that "[n]o statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package." Id. at 514, 112 S.Ct. at 2616. In the 1969 Act, Congress provided that
No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
15 U.S.C. § 1334(b).
The same kind of clear statement of congressional intent to preempt was found recently by this court in the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq. (FIFRA) when we found that a number of state law claims relating to the packaging and labeling of chemicals were preempted by the express language contained in that Act. All-Pure Chem. Co. v. White, 127 Wash.2d 1, 7, 896 P.2d 697 (1995); Goodwin v. Bacon, 127 Wash.2d 50, 896 P.2d 673 (1995); Hue v. Farmboy Spray Co., Inc., 127 Wash.2d 67, 896 P.2d 682 (1995). The FIFRA clause under consideration in those three cases provided that
A State may regulate the sale or use of any federally regulated pesticide or device... but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
....
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
All-Pure Chem. Co., 127 Wash.2d at 9, 896 P.2d 697 (quoting 7 U.S.C. § 136(v)).
This court has also recently found a clear preemption statement in the Employee Retirement Income Security Act of 1974 (ERISA). Puget Sound Elec. Workers Health & Welfare Trust Fund, et al. v. Merit Co., et al, 123 Wash.2d 565, 870 P.2d 960 (1994). In that case we reviewed an ERISA provision which preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Id. at 569, 870 P.2d 960. We found that provision preempts any state law touching on ERISA benefit plans, even if those laws merely supplemented the Act and were consistent in purpose. Id. at 573, 870 P.2d 960.
The preemption language in the cigarette labeling acts considered in Cipollone, as well as in FIFRA and ERISA, show that "Congress [had] considered the issue of pre-emption and [had] included in the enacted legislation a provision explicitly addressing that issue" which provides a "reliable indicium of congressional intent with respect to state authority." Cipollone, 505 U.S. at 517, 112 S.Ct. at 2618. That is not the case with LHWCA which lacks express indicia of congressional intent to preempt state employer's state causes of action against an employee. We therefore conclude that the Act does not contain express exemption language.[2]
Accordingly, we must determine whether, aside from any express preemption, Congress intended to preempt state law claims for recoupment of overpayment made pursuant to the LHWCA.
*743 (B) Occupation of the Field
The issue of whether federal law occupies the field such that state law is preempted by a federal act is essentially a question of statutory construction. Cipollone, 505 U.S. at 515-16, 112 S.Ct. at 2617. The Court of Appeals concluded that the LHWCA occupies the field of employer remedies for overpayment of compensation under LHWCA, relying primarily on the reasoning of two federal Court of Appeals cases, Eggert I, 953 F.2d 552, and Ceres Gulf v. Cooper, 957 F.2d 1199 (5th Cir.1992).
In Eggert I, the Ninth Circuit overturned the district court's grant of summary judgment in favor of SSA because it found neither statutory authority for repayment nor an implied federal common law remedy for recoupment. The court examined three provisions of the LHWCA, §§ 914(j), 922, and 908(j), which specifically address the employer's remedies for recouping overpayment, and concluded these provisions represent the exclusive federal remedies for recouping overpayment.
Section 914(j) provides that an employer is entitled to reimbursement out of unpaid compensation due. Section 922 deals with modification of ALJ orders and provides that if a new order establishes a decreased benefit rate "any payment made prior thereto in excess of [a] decreased rate shall be deducted from any unpaid compensation." Section 908(j) provides that an employee who fails to file an earnings report or understates earnings forfeits his right to benefits for the period and further provides that any forfeited compensation that the employer has already paid is credited against future benefits.
In addition to these remedy provisions, the court noted that § 931 provides for criminal penalties for the making of fraudulent statements to obtain LHWCA benefits. Based on these provisions, the Ninth Circuit reasoned that Congress did not intend to permit an employer a federal cause of action against a claimant for repayment of alleged overpayment of compensation and reversed the district court's holding that SSA had an implied remedy under the LHWCA.
Although Congress did not expressly preclude an employer action for repayment, its intent on this issue is understood by the express provisions we have examined. We will not rewrite or engraft new remedies upon the provisions Congress has affirmatively and specifically enacted.
Eggert I, 953 F.2d at 557.[3]
In the second case, Ceres Gulf, an employer who had overpaid benefits under the Act sought reimbursement from the employee through an ALJ order. The ALJ denied the requested relief because he found that § 914(j), the only authority for recoupment of overpayment, is limited to situations where additional compensation is due. Ceres Gulf, 957 F.2d at 1201. The employer appealed and the BRB affirmed, holding that reimbursement under the statute is available only when future benefits are owing. Id. at 1201. The employer did not appeal, but instead brought a separate action in federal district court. The employer conceded that the LHWCA contains no provision for recouping overpayment when no future compensation is owing. Instead, the employer argued that its claims arise under the federal common law of fraud and unjust enrichment. Id. at 1207.
The Fifth Circuit, citing Eggert I, concluded that the LHWCA creates no federal remedy for an employer to recover overpayment. It also found that jurisdiction is unavailable where "Congress has created a specific, statutorily-defined scheme that clearly supplants the general jurisdictional statute." Ceres Gulf, 957 F.2d at 1208. The Court stated that to permit the employer's suit
would run counter not only to the express provisions of the LHWCAwhich, alone, ends the inquirybut also to the underlying purpose of the Act. To allow this separate action, we would have to ignore the compromise effected by the exclusivity *744 aspects of the LHWCA, under which the employee is barred from suing the employer, in exchange for more prompt and certain, although possibly lower, recovery.
Ceres Gulf, 957 F.2d at 1209.[4]See also Lennon v. Waterfront Transport, 20 F.3d 658 (5th Cir.1994) (agreeing with Eggert I and Ceres Gulf).
Eggert I and Ceres Gulf clearly establish that no statutory remedy for recoupment of overpayment is provided under the LHWCA. Further, these courts concluded that the absence of a statutory remedy implies that Congress did not intend that other non-statutory federal remedies be available to an employer who overpaid based on fraudulent claims. However, neither Eggert I nor Ceres Gulf decided the question presented to this courtwhether Congress intended to preempt state authority in the area of remedies for overpayment where no future payment is owing against which offset may be made.
While the LHWCA's remedy provisions, §§ 914(j), 922, and 908(j), may support a conclusion that no federal common law remedy for recoupment exists, they provide little support for deciding the question of federal preemption. When the issue is federal pre-emption, as it is in this case, the question is not whether other federal relief is or is not available. The question instead is whether state causes of action are preempted. Therefore, the fact that federal relief may be limited by the LHWCA provisions simply does not answer the question whether state law remedies are available. More importantly, the history and purpose of the LHWCA and the many cases cited by SSA support a contrary conclusion.
The Act has its origins in a 1917 Supreme Court decision, Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), which held that application of state compensation laws to maritime injuries was constitutionally barred because such laws interfered with the federal policy of a uniform maritime law. The Supreme Court invalidated several subsequent attempts by Congress to extend protection to marine workers through state laws. In response to these decisions, Congress passed the LHWCA in 1927 to provide federal compensation for injuries occurring on navigable waters where such injuries could not be compensated under state law.
Application of the LHWCA presented difficulty, however, because compensation under the LHWCA required a jurisdictional determination, i.e., compensation depended on where the injury occurred, and the employee was forced to guess under which compensation scheme he fell. This jurisdictional dilemma was partially resolved by two Supreme Court decisions, Davis v. Department of Labor & Indus., 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), reh'g denied, 317 U.S. 713, 63 S.Ct. 438, 87 L.Ed. 567 (1943) and Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). These cases construed the LHWCA as providing for concurrent federal and state jurisdiction over injuries occurring on navigable waters so that an employee could be compensated under either state or federal law without an election requirement. Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 719, 100 S.Ct. 2432, 2436, 65 L.Ed.2d 458 (1980).
In 1972, Congress attempted to end all jurisdictional concerns by amending the LHWCA to extend coverage to marine injuries which occurred beyond navigable waters. Such injuries had been viewed as compensable only under state law in Nacirema Operating Co. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969), reh'g denied, 397 U.S. 929, 90 S.Ct. 895, 25 L.Ed.2d 109 (1970).
Following the 1972 amendment five employees of Sun Ship, injured in the course of shipbuilding or ship repairing at a location on the Delaware River, filed for benefits under the Pennsylvania Workmen's Compensation Act (PWCA). The employer contended that under the 1972 amendments the LHWCA became the employees' exclusive remedy and that the LHWCA preempted state compensation *745 laws. Sun Ship, 447 U.S. at 717, 100 S.Ct. at 2434-35.
The Supreme Court rejected the employers' argument that the amendments mandated exclusive federal jurisdiction, construing the 1972 amendments as supplementing, not supplanting state law.
The language of the 1972 amendments cannot fairly be understood as pre-empting state workers' remedies from the field of the LHCWA, and thereby resurrecting the jurisdictional monstrosity that existed before the clarifying opinions in Davis and Calbeck.

Sun Ship, 447 U.S. at 720, 100 S.Ct. at 2436.
SSA relies on Sun Ship for its position that Congress did not intend to occupy the field of employer remedies under the LHWCA. Specifically, SSA contends that the Sun Ship court rejected the argument that 33 U.S.C. § 905(a) mandates exclusive jurisdiction over employee's remedies in the LHWCA.
In Sun Ship, the Supreme Court noted that it had implicitly rejected the argument for exclusive jurisdiction in Calbeck.
In fact, Calbeck upheld an award under the LHWCA against which had been credited payments made under the aegis of a state compensation statute; we noted that 33 U.S.C. § 905 was "not involved in this case," 370 U.S., at 132, n. 16, 82 S.Ct., at 1206, n. 16. Thus, we did not construe § 905(a) to exclude remedies offered by other jurisdictions.
Id. at 722-23 n. 4, 100 S.Ct. at 2438 n. 4. The Court concluded that construing the amendments to extend concurrent jurisdiction accurately reflected the legislative policy of Congressto aid injured maritime workers. Id. at 726, 100 S.Ct. at 2439.
SSA cites several additional cases to support its position that Congress did not intend to preempt state law by occupying the field of employer or employee remedies which are not in conflict with the exclusivity provisions of §§ 905(a) and 933(i). In Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969) the court addressed the question of whether a stevedoring contractor whose longshoreman employee was killed in the course of his employment is limited to the subrogation remedy of the LHWCA in seeking reimbursement from a ship owner on whose vessel the longshoreman met his death. Both the federal district court and the Court of Appeals held that statutory subrogation was the exclusive remedy against the ship owner. Id. at 407, 89 S.Ct. at 1146. The Supreme Court reversed, finding that "[n]othing on the face of § 33 of the Act purports to limit the employer's remedy against third persons to subrogation to the rights of the deceased employee's representative." Id. at 412, 89 S.Ct. at 1149. Although that section provided that the employer's payment of compensation operates as an assignment of rights of the legal representative to recover damages against third parties, Congress was merely giving the employer, in return for his absolute liability to the employee's representative, part of the latter's rights against others.
But the legislative grant of a new right does not ordinarily cut off or preclude other nonstatutory rights in the absence of clear language to that effect. When Congress imposed on the employer absolute liability for compensation, it explicitly made that liability exclusive. Yet in the same Act it attached no such exclusivity to the employer's action against third persons as a subrogee to the rights of the employee or his representative.
Id. at 412-13, 89 S.Ct. at 1149. See also Allen v. Texaco, Inc., 510 F.2d 977 (5th Cir. 1975) (no intent in the Act to preclude employer's right to reimbursement out of employee's recovery from third party for injuries under the Act).
In another case cited by SSA, Phillips v. Marine Concrete Structures, Inc., 877 F.2d 1231 (5th Cir.1989), reh'g granted and opinion reinstated in relevant part, 895 F.2d 1033 (5th Cir.1990), an employee was overpaid pursuant to an ALJ award which was subsequently modified by the BRB. Specifically, during a period of temporary total disability, the employee received the benefit of three LHWCA § 10(f) adjustments to which he was not entitled. Id. at 1234.
*746 On appeal, the Fifth Circuit held that the employer was not precluded from obtaining reimbursement from a source other than future benefits which it may have owed the employee. First, the court looked at the text of the statute and found that the language of the LHWCA is broad enough to permit the employer's reimbursement to come out of any compensation still owing the employee "there is no requirement that the reimbursement come from installments still owed by the party that made the overpayment." Phillips, 877 F.2d at 1234. The court then went on to observe that the purpose of LHWCA § 14(j) (providing that an employer making advance payments of compensation is entitled to be reimbursed out of any unpaid compensation) is apparent:
If an employer has paid out, and the claimant has received, LHWCA benefits to which it is later found that the claimant is not entitled, the employer should be able to recover those funds. This is a corollary to one of the LHWCA's main purposes, which is to ensure the prompt payment of benefits that may be necessary to a claimant's survival.
Id. at 1234.
In a case similar to the one before us, the Ninth Circuit permitted the State of Washington to recover payments erroneously made under RCW Title 51 directly from the employee. E.P. Paup Co. v. Director, Office of Workers Compensation Programs, 999 F.2d 1341 (9th Cir.1993). In that case, the court considered whether § 903(e) of the LHWCA preempted Washington state law requiring an employee receiving LHWCA benefits to repay any benefits received under RCW 51.[5]
The Ninth Circuit rejected the employer's contention that RCW 51 was preempted by § 903(e). First, it observed that the language of the Act did not support a conclusion that Congress intended to expressly preempt the State's reimbursement scheme. E.P. Paup, 999 F.2d at 1348. Next, the court examined the legislative history of § 903(e), which revealed no intent to "preempt state workers' compensation law or to upset the scheme allowing concurrent federal and state coverage." Id. at 1349. The court then concluded that no direct conflict existed because
nothing in the federal legislation prohibits the state from excluding coverage to workers eligible for LHWCA benefits or from seeking reimbursement of amounts paid to an employee while pursuing a federal remedy.
Id. at 1349. The court noted that the sole purpose of the credit doctrine codified in § 903(e) was to prevent double recoveries. The court observed that RCW 51 is not an obstacle to accomplishing that goal, and, in fact, furthers the goal by preventing double recovery. Id. at 1350. Finally, the court agreed with the employer that the BRB erred in ordering the employer to reimburse the State, and instead ordered that the employee repay the state directly, modifying the BRB order to so provide. Id. at 1351.
SSA also cites a number of state court cases which support its position that the Act does not preempt state common law claims. Moss v. Dixie Machine, Welding & Metal Works, Inc., 617 So.2d 959, 960-61 (La.App. 4th Cir.) (intentional tort and wrongful discharge claims asserted against an employer under state law are not preempted by the LHWCA), writ denied, 620 So.2d 845, cert. denied, ___ U.S. ___, 114 S.Ct. 469, 126 L.Ed.2d 420 (1993); Logan v. Louisiana Dock Co., 541 So.2d 182, 185 (La.) (no evidence in the LHWCA of congressional intent to preempt state law; § 905 not designed to preempt state remedies but to abolish non-LHWCA federal claims by injured longshoremen), cert dismissed, 492 U.S. 939, 110 S.Ct. 30, 106 L.Ed.2d 639 (1989); Hernandez v. Badger Constr. Equip. Co., 28 Cal.App.4th 1791, 1808, 34 Cal.Rptr.2d 732 (1994) (noting employee's third party tort claims brought under California law not preempted by the LHWCA; finding California code provision reducing employee's recovery by percentage of employer's fault presents no actual conflict *747 with substantive federal right), cert. denied, ___ U.S. ___, 115 S.Ct. 1694, 131 L.Ed.2d 558 (1995); but see Holcombe v. Alabama Dry Dock & Shipbuilding Corp., 602 So.2d 400, 402 (Ala.1992) (holding that because LHWCA's provisions for recovering erroneously paid compensation benefits are exclusive and no implied federal common law cause of action for recovery exists, state law claims are preempted), cert denied, 506 U.S. 1050, 113 S.Ct. 971, 122 L.Ed.2d 126 (1993).
The Court of Appeals here distinguished a number of these decisions, stating that the LHWCA addresses the rights and obligations between an employer and an employee whereas the cases cited by SSA involved "situations involving different relationships and therefore do not apply to the present analysis." Eggert II, 76 Wash.App. at 623, 886 P.2d 1174. While this observation is correct, it does not address the broader implication of these casesthat employee and employer each retain remedies under state law so long as the exclusivity proscriptions of §§ 905(a) and 933(i) are observed and state law does not actually conflict with the federal law or hinder its objectives. As the Hernandez court stated:
[F]ederal demands upon state courts go no further than to require that substantive rights granted litigants under federal law shall not be abridged by the states.
....
Just as clear, however, is the premise that as to matters which in no way affect the substantive `federal rights' of the parties, state law will be observed in state courts.
Hernandez, 28 Cal.App.4th at 1809 n. 14, 34 Cal.Rptr.2d 732 (quoting Carlson v. Pacific Far East Lines, 29 Cal.App.3d 883, 888, 105 Cal.Rptr. 885 (1973)).
In this case the exclusivity provisions of LHWCA are not implicated nor is any substantive right granted under federal law affected. Unless the employer remedies sought in this case actually conflict with the remedy provisions of the LHWCA or hinder the objective of the Act, we conclude that state law remedies may supplement the Act.
(C) Actual Conflict/Hindering the Purposes and Objectives of Federal Law
State law is preempted if that law actually conflicts with federal law. Cipollone, 505 U.S. at 515-16, 112 S.Ct. at 2617. Initially, it is important to recognize that this is a case in which no future benefits are owing and compensation has been wrongfully or fraudulently obtained. Reimbursement under these circumstances is not addressed in the statutory scheme of the LHWCA. Moreover, the Court of Appeals acknowledged that the remedy the employer seeks is not expressly precluded by the LHWCA. The court said, however, that "when Congress has wished to allow for the recovery of overpayment of federal benefits under state law, it has expressly done so." Eggert II, 76 Wash.App. at 625 n. 7, 886 P.2d 1174.
In Harris v. Labor & Indus., 120 Wash.2d 461, 843 P.2d 1056 (1993), this court rejected an identical argument as a basis for finding preemption. In Harris, the court was asked to decide whether provisions of RCW 51 reducing workers' benefits to allow an offset against Social Security benefits conflicted with federal law. Id. at 464, 843 P.2d 1056. It found no actual conflict in the language of the two acts. Id. at 470, 843 P.2d 1056. The court also declined to infer pre-emption from Congress' silence, rejecting the argument that because Congress did not mention state offsets for retirement benefits it must have intended to prohibit them. Id. at 470 n. 3, 843 P.2d 1056. It noted that "we normally require clear expression of congressional intent before we will find preemption." Id. at 470 n. 3, 843 P.2d 1056. In this case Congress has been silent. As in Harris, we decline to infer preemption from congressional silence.
We turn next to the question of whether the state law remedies sought in this case are at odds with the purposes of the LHWCA. In Sun Ship, 447 U.S. at 720, 100 S.Ct. at 2436, the Supreme Court found that the underlying purpose of the LHWCA is to aid maritime workers who would otherwise have no access to benefits by establishing a modern compensation system. Likewise, in Phillips, 877 F.2d at 1234, the court found that one of the main purposes of the *748 LHWCA "is to ensure the prompt payment of benefits that may be necessary to a claimant's survival."
Similar concerns underlay Washington's workers' compensation statutes. RCW 51.04.010 ("The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions.... sure and certain relief for workers... is hereby provided...."). This court has also recognized that the primary purpose of the workers' compensation statutes is to provide sure and certain relief to injures workers and their families. Clark v. Pacificorp, 118 Wash.2d 167, 186 n. 9, 822 P.2d 162 (1991); Favor v. Department of Labor & Indus., 53 Wash.2d 698, 703, 336 P.2d 382 (1959).
This court has relied on the purposes of this state's workers' compensation statutes to deny recoupment claims made by the Department of Labor and Industries. In Deal v. Department of Labor & Indus., 78 Wash.2d 537, 477 P.2d 175 (1970) the Department sought recoupment of overpayment made as a result of its own error. The court disallowed recoupment stating:
If the industrial insurance recipient must live in the fear that he may be required to repay, at some indeterminate date, that money which he has already in good faith accepted, a fundamental purpose of the actto provide "sure and certain relief for workmen, ... their families and dependents"would be emasculated.
Id. at 541, 477 P.2d 175.[6]See also State ex rel. Dunbar v. Olson, 172 Wash. 424, 20 P.2d 850 (1933) (denying recovery of excessive payment mistakenly made by Department).
Although this court denied recoupment of overpayment mistakenly made by the Department, the court left open the door for recovery where the overpayment results from an employee's intentional misconduct.
[A]bsent express statutory prescription, moneys paid a recipient under our industrial insurance statute by virtue of a mistake of fact, not induced by fraud or the result of a clerical error, may not be recouped from future payments to which the recipient is entitled.
Deal, 78 Wash.2d at 540, 477 P.2d 175. See also Dunbar, 172 Wash. 424, 20 P.2d 850 (leaving open possibility of recovering overpayment induced by fraud).
Both the purposes of the LHWCA as well as its provisions relating to overpayment similarly suggest that use of state law to recoup benefits mistakenly paid under the LHWCA may hinder the purposes of the Act. However, because the LHWCA provides for felony prosecution for fraud and misrepresentation, it is also clear that Congress did not intend that workers be rewarded by fraud or misrepresentation. Thus, we find that permitting an employer to pursue state law remedies to recoup over $96,000 in wrongfully obtained benefits complementsrather than hindersthe purposes and objectives of the LHWCA.
Based on the strong presumption against preemption and the absence of clear congressional intent to preempt, contained either explicitly or implicitly in the structure or purpose of the LHWCA, as well as our conclusion that permitting SSA to pursue state law remedies under the facts of this case complements the purposes of the LHWCA, we find no preemption of state law claims for recovery of fraudulently obtained benefits under the LHWCA.

II
In its Petition for Review, SSA raises only the preemption issue discussed above. However, pursuant to RAP 13.7(b), if this court reverses a decision of the Court of Appeals that did not consider all the issues raised which might support that decision, this court will either decide those issues or remand to the Court of Appeals. RAP 13.7(b). In this review, SSA has submitted its briefs from the Court of Appeals which raise two additional issues not resolved by that court. We will decide the remaining questions.
(1) Res Judicata
Eggert argues that SSA's state court action is barred by the doctrine of res judicata *749 because two earlier final judgments were entered dismissing those claimsthe ALJ's decision and the Ninth Circuit's decision.
Eggert does not distinguish between res judicata and collateral estoppel. The two are distinct, but either res judicata (claim preclusion) or collateral estoppel (issue preclusion) may bar a second action.
Under [res judicata] a plaintiff is not allowed to recast his claim under a different theory and sue again. Where a plaintiff's second claim clearly is a new, distinct claim, it is still possible that an individual issue will be precluded in the second action under the doctrine of collateral estoppel or issue preclusion. In an instance of claim preclusion, all issues which might have been raised and determined are precluded. In the case of issue preclusion, only those issues actually litigated and necessarily determined are precluded.
Shoemaker v. Bremerton, 109 Wash.2d 504, 507, 745 P.2d 858 (1987).
Res judicata applies in the administrative setting only where the administrative agency "resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 501 (5th Cir.1988) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)), cert. denied, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989). In Washington, other considerations are also relevant when the prior adjudication took place in an administrative setting including "(1) whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations." Shoemaker, 109 Wash.2d at 508, 745 P.2d 858 (quoting State v. Dupard, 93 Wash.2d 268, 275, 609 P.2d 961 (1980)).
In this case, there was no opportunity for SSA to litigate its claims for fraud and misrepresentation before the ALJ. In his first decision, the ALJ determined that Eggert was entitled to benefits on a mistaken application of law. SSA appealed on that basis and on remand the ALJ changed his order to correct that legal error. The ALJ noted, incidentally, that Eggert's lies and misrepresentations made it difficult to properly assess the medical testimony presented in determining the impact of nonwork-related injuries on his physical condition. Whether the employee had misrepresented or committed fraud, however, was not before the ALJ; nor could the ALJ have resolved such claims because, as held in Eggert I, there is no implied right to recoup reimbursement in the LHWCA, which defines the scope of the ALJ's authority. If the Ninth Circuit lacked jurisdiction to even consider SSA's claims as it says it did, then surely an ALJ is not in a better position to do so.
Likewise, SSA's claims are not barred by res judicata as a result of the Ninth Circuit's decision in Eggert I. In that case, the Ninth Circuit dismissed SSA's state law claims without prejudice because it found that pendant claim jurisdiction was inappropriate. A dismissal for lack of jurisdiction is not res judicata. Peacock v. Piper, 81 Wash.2d 731, 734, 504 P.2d 1124 (1973).
(2) Collateral Estoppel
Eggert also argues that SSA's claims are barred under collateral estoppel. In his brief, he argues that these claims were resolved by the ALJ and the Ninth Circuit. It is difficult to understand this argument in light of the Eggert I court's finding that it lacked an adequate basis to retain pendant jurisdiction over SSA's state claims and its subsequent dismissal without prejudice. Nor is it clear how the ALJ could have decided SSA's state claims. Finally, as to SSA's federal claims, the Ninth Circuit dismissed for lack of federal question jurisdiction.

III
The final issue raised in this appeal is whether SSA failed to exhaust administrative remedies.
The issue of exhaustion of administrative remedies under the LHWCA has been addressed on one previous occasion by the Court of Appeals in Washington in Todd Pacific Shipyards Corp. v. Gibson, 52 Wash.App. 653, 763 P.2d 206 (1988). Similar to the *750 circumstances in this case, the employer in Gibson overpaid the employee under the LHWCA. In that case, however, Todd did not controvert the claim, but paid the employee until July of 1985. When the ALJ determined that the employee was not entitled to any further benefits and that he had reached his maximum medical improvement on or before January 15, 1982, Todd asked the employee to repay the benefits which had been overpaid. The employee refused and Todd filed suit in state court on various common law theories. Id. at 654, 763 P.2d 206.
The question before the court was "whether an employer who, without controverting a disability claim, pays disability benefits under the act may recover the alleged overpayment in a state court." Id. at 654, 763 P.2d 206. Without deciding whether an independent action could lie in state court, the court concluded that an employer must first litigate its right to recover through the procedures provided by the Act. Id. at 656, 763 P.2d 206. The court cited the doctrine of primary jurisdiction and found that the doctrine applies "where, even though a claim originally may be cognizable in the courts, the enforcement of the claim requires the resolution of issues within the particular competence of an administrative body." Id. at 656, 763 P.2d 206 (citing United States v. Western Pac. R.R., 352 U.S. 59, 63-65, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)).[7]
Gibson does not support Eggert's failure to exhaust contention in this case since SSA did controvert and the ALJ did issue an order establishing the amount of the benefits owing to Eggert. Thus, the "issues within the particular competence of [the] administrative body" have been resolved. Id. at 656, 763 P.2d 206. It can not be too strongly emphasized, however, that administrative remedies must be fully exhausted before an aggrieved employer may avail itself of state law remedies. The courts of this state will not become the forum for complaints regarding overpayments made under the LHWCA where statutory administrative remedies are available nor in circumstances where the employer has failed to establish the amount of overpayment through administrative order.
Finally, Eggert argues that SSA should have obtained an order requiring him to repay compensation. Pet.Br. at 25. As discussed above, the ALJ had no authority to order reimbursement under the LHWCA. Where there is no possible remedy at all there can scarcely be a failure to exhaust remedies.
We reverse the Court of Appeals and reinstate the judgment in favor of SSA in the amount of $96,651.55.
DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.
SANDERS, J., did not participate.
NOTES
[1] SSA voluntarily dismissed its fourth claim for relief.
[2] Nor can we agree with SSA's contention that a finding of express preemption language ends the preemption inquiry. The Cipollone court did not reject the traditional preemption analysis. Rather, it emphasized the obviousif Congress speaks specifically and expressly on the issue of preemption in a statute, there may be no need for the courts to proceed to an implied preemption analysis. As the court in Cipollone stated "`[t]he purpose of Congress is the ultimate touchstone' of the pre-emption analysis." Cipollone, 505 U.S. at 516, 112 S.Ct. at 2617 (quoting Malone v. White Motor Corp., 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)).

The fact that an express definition of the preemptive reach of a statute "implies"i.e. supports a reasonable inferencethat Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied preemption.
Freightliner Corp. v. Myrick, ___ U.S. ___, ___, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995).
[3] The court dismissed SSA's claims for lack of jurisdiction. Amicus suggests that the court erred in finding that it lacked jurisdiction because "[t]he question whether a federal statute creates a claim for relief is not jurisdictional." Br. for the Director, Office of Workers' Compensation Programs, United States Dep't of Labor, Amicus Curiae at 13 (citing Northwest Airlines, Inc. v. County of Kent, ___ U.S. ___, ___, 114 S.Ct. 855, 862, 127 L.Ed.2d 183 (1994)).
[4] Like the Eggert court, the court in Ceres Gulf dismissed for lack of jurisdiction. However, as amicus point out, the analysis underlying its decision appears to be that no federal cause of action exists for fraud or restitution.
[5] In Washington, provisions of RCW 51 do not apply to employers or workers who are covered by LHWCA. RCW 51.12.100. In the event that payments are made prior to a determination that the claim is covered by the LHWCA, the employee must repay the benefits paid. E.P. Paup Co. v. Director, OWCP, 999 F.2d 1341 (9th Cir.1993).
[6] The Legislature has since added a provision to permit recoupment, RCW 51.32.240.
[7] The employee in Gibson argued that Todd would never have a remedy outside of the Act. The court said that it need not and would not decide whether the employee was correct but did observe that the contention "is based on the act's where statutory administrative remedies are available nor in circumstances where the employer has failed to establish the amount of overpayment through administrative order. silence concerning other remedies, a less than satisfactory basis for decision." Todd Pacific Shipyards Corp. v. Gibson, 52 Wash.App. 653, 657, 763 P.2d 206 (1988).