IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32899-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY E. DICKERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Gregory Dickerson was convicted of one count of first degree

rape with a deadly weapon. The trial court imposed a community custody condition that

prohibits him from engaging in any romantic relationship without approval from his

community custody officer and therapist. On appeal, Mr. Dickerson contends this

condition is not crime-related and violates his United States Constitution First

Amendment freedom of association. While we find no First Amendment violation, we

conclude the condition is unconstitutionally vague. We remand with directions to strike

the condition, leaving in place a related provision that more clearly addresses the

sentencing court's concern.

FACTS AND PROCEDURAL BACKGROUND

In May 2014, a jury found Gregory Dickerson guilty of first degree rape with a

deadly weapon. The victim was Mr. Dickerson's ex-girlfriend, whom he had dated for

four years and with whom he has two children. The court sentenced him to 128 months

incarceration, and imposed a number of community custody conditions that will take effect upon his release. Only the following two conditions are relevant to his appeal:

> (17) That you do not have sexual contact with anyone without their approval and awareness of your sexual offense conviction.
>
> (18) That you do not enter a romantic relationship without the prior approval of the [community corrections officer] and Therapist.

Clerk's Papers (CP) at 97. Mr. Dickerson challenges only condition 18.

## ANALYSIS

Mr. Dickerson argues that community custody condition 18, which prohibits him from entering into a "romantic relationship" without permission, is not crime-related and violates his First Amendment right to association because it is overbroad.

Though Mr. Dickerson did not object to the condition at trial, challenges to community custody conditions as illegal or erroneous may be made for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

### *The issue is ripe for review*

As a threshold matter, because Mr. Dickerson is currently incarcerated and has not yet been charged with violating the challenged community custody condition, we must determine whether the challenge is ripe for review. *See State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). Preenforcement challenges to community custody conditions are ripe for review "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Bahl*, 164

2

Wn.2d at 751 (quoting *First United Methodist Church v. Hr'g Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). The court must also consider any hardship to the parties that may result from withholding court consideration. *Id.*

In this case the issue is ripe for review. First, the questions raised—whether the condition is crime-related and whether it is unconstitutional—are pure issues of law. *See Sanchez Valencia*, 169 Wn.2d at 788. Regardless of the manner in which the community custody officer or therapist implement the condition in the future, the extent to which it is crime-related or infringes on a fundamental right will not change with time. *Id.*

Second, the issue does not require further factual development. The condition limits Mr. Dickerson as soon as he is placed in community custody, and requires no further State action. *Id.* at 788-89. Third, the challenged action is final. *Id.* at 789.

Finally, Mr. Dickerson would suffer significant risk of hardship if the court declined to review his challenge at this time. The fact that Mr. Dickerson will have to request permission to enter into a romantic relationship to avoid a penalty under a potentially illegal regulation is a hardship in itself. *Bahl*, 164 Wn.2d at 747. That Mr. Dickerson would have to expose himself to arrest or prosecution in order to challenge a condition he claims violates his constitutional rights is a significant hardship. *Id.* The claim is therefore ripe for review.

3

No. 32899-6-III
*State v. Dickerson*

*The community custody condition violates the Fourteenth Amendment*

Mr. Dickerson challenges the community custody condition under the United States Constitution First Amendment freedom of association. However, we believe his challenge more properly falls under the right to intimate association protected by the United States Constitution Fourteenth Amendment's due process clause.

In *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984), the Supreme Court identified two types of associational rights protected by the Constitution: the freedom of "expressive association" and freedom of "intimate association." The Court explicitly stated the right of expressive association stems from the First Amendment and guards speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.* at 618.

The Court was less clear about the source of the right to intimate association, stating only that it "receives protection as a fundamental element of personal liberty." *Id.* The Court appeared to acknowledge that it was not identifying where the right comes from:

> The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. *Without precisely identifying every consideration that may underlie this type of constitutional protection*, we have noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State. Moreover, the constitutional shelter afforded such relationships

4

> reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity *that is central to any concept of liberty.*

*Id.* at 618-19 (emphasis added) (citations omitted).

> This right protects the

> choices to enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.

*Id.* at 617-18. These certain "intimate human relationships" are those "that attend the creation and sustenance of a family." *Id.* at 617, 619. They include marriage, childbirth, the raising and educating of one's children, and cohabitation with one's relatives. *Id.* at 619. The right does not extend to choosing one's fellow employees. *Id.* at 620. However, the Court noted that between the ability to choose one's spouse and the ability to choose one's fellow employees

> lies a broad range of human relationships that may make greater or lesser claims to constitutional protection from particular incursions by the State. Determining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments. We need not mark the potentially significant points on this terrain with any precision. *We note only that factors that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent.*

*Id.* at 620 (emphasis added) (citation omitted).

5

No. 32899-6-III
*State v. Dickerson*

Since the Supreme Court issued *Roberts*, courts have disagreed about the source and scope of the right to intimate association.[1] Washington has taken the position that this right stems from the Fourteenth Amendment's due process clause and "principles of liberty and privacy." *City of Bremerton v. Widell*, 146 Wn.2d 561, 575, 51 P.3d 733 (2002); *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 601, 192 P.3d 306 (2008). Accordingly, the right Mr. Dickerson asserts implicates the Fourteenth, rather than the First Amendment.

The source of the right is critical, because it affects the grounds on which the community custody condition may be challenged. Mr. Dickerson challenges the community custody condition on grounds of overbreadth, but courts have "generally confined the overbreadth argument to statutes or ordinances impinging on First Amendment activities." *City of Seattle v. Montana*, 129 Wn.2d 583, 598 n.7, 919 P.2d 1218 (1996). Because the associational right Mr. Dickerson asserts stems from the

---

[1] *See* Collin O'Connor Udell, *Intimate Association: Resurrecting a Hybrid Right*, 7 TEX. J. WOMEN & L. 231 (1998) (noting that the Seventh and Tenth circuits have held the right to intimate association stems from the Fourteenth Amendment, that the Fifth, Sixth, Ninth, and Eleventh circuits have held the right stems from the First Amendment, and that the Third Circuit's position is unclear); Nancy Catherine Marcus, *The Freedom of Intimate Association in the Twenty First Century*, 16 GEO. MASON U. CIV. RTS. L.J. 269 (2006) (noting that the confusion and circuit split has not been resolved).

No. 32899-6-III
*State v. Dickerson*

Fourteenth Amendment, his overbreadth challenge fails.[2]

The condition may, however, be struck on due process vagueness grounds under the Fourteenth Amendment for reasons similar to those argued by Mr. Dickerson. "The due process vagueness doctrine under the Fourteenth Amendment . . . requires that citizens have fair warning of proscribed conduct." *Bahl*, 164 Wn.2d at 752. The purpose of the vagueness doctrine is to ensure criminal offenses are defined "'with sufficient definiteness that ordinary people can understand what conduct is proscribed,'" and to "'provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Id.* at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

"Generally, 'imposing conditions of community custody is within the discretion of the sentencing court and will be reversed if manifestly unreasonable.'" *Sanchez Valencia*, 169 Wn.2d at 791-92, (quoting *Bahl*, 164 Wn.2d at 753). An unconstitutional condition is manifestly unreasonable. *Bahl*, 164 Wn.2d at 753. Unlike statutes or ordinances, conditions of community custody are not presumed to be constitutional. *Sanchez Valencia*, 169 Wn.2d at 793.

---

[2] Even if the condition could be challenged on First Amendment grounds, Mr. Dickerson has failed to show his relationships with future potential romantic partners are protected under the right to intimate association. While Washington has refused to hold that the right to intimate association is limited only to familial relationships, it has found that "an engaged couple who is not cohabitating is not entitled to constitutional protection." *City of Bremerton*, 146 Wn.2d at 577. If an engaged couple cannot claim the right to intimate association, Mr. Dickerson cannot claim it with respect to his more attenuated relationships.

7

Other jurisdictions have considered a similar condition with varying results. For example, in *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010), the defendant was convicted of possession of child pornography and the trial court imposed a condition of supervised release that required the defendant to "'notify the Probation Department when he establishes a significant romantic relationship.'" On appeal, the court found this condition unconstitutionally vague:

> We easily conclude that people of common intelligence (or, for that matter, of high intelligence) would find it impossible to agree on the proper application of a release condition triggered by entry into a "significant romantic relationship." What makes a relationship "romantic," let alone "significant" in its romantic depth, can be the subject of endless debate that varies across generations, regions, and genders. For some, it would involve the exchange of gifts such as flowers or chocolates; for others, it would depend on acts of physical intimacy; and for still others, all of these elements could be present yet the relationship, without a promise of exclusivity would not be "significant." *See, e.g.*, Wolfgang Amadeus Mozart, *The Marriage of Figaro* (1786); Jane Austen, *Mansfield Park* (Thomas Egerton, 1814); *When Harry Met Sally* (Columbia Pictures 1989); *He's Just Not That Into You* (Flower Films 2009).

*Id.* at 81. The court stated that the defendant's "continued freedom during supervised release should not hinge on the accuracy of his prediction of whether a given probation officer, prosecutor, or judge would conclude that a relationship was significant or romantic." *Id.*

Conversely, in *United States v. Pennington*, 606 F. App'x 216, 223 (5th Cir. 2015), *cert. denied*, ____ U.S. ____, 136 S. Ct. 166, 193 L. Ed. 2d 122 (2015), the court found a condition that prohibited the defendant from "dating" or "engaging in a

8

relationship" with individuals with minor children without the consent of his probation

officer was not unconstitutionally vague. The court stated that "the requirement of

romantic involvement provides sufficient specificity to put [the defendant] on notice of

when he must notify and seek approval from his probation officer." *Id.* The court went

on to explain its disagreement with the court in *Reeves*:

> We may part ways here with the Second Circuit. . . . The Second Circuit
> cites Hollywood for the truth that relationships often begin, and continue,
> with romantic uncertainty. However, while the line between friendship and
> romance may not be immediately clear to a moviegoer, or even to the target
> of affections, [the defendant] should know when he intends to become
> romantically involved with another person. Regardless, courts every day
> are obliged to adjudicate criminal cases, even with arrested persons and not
> twice-convicted sex offenders, and must assess and impose no-contact
> orders, as well as lesser restrictions on personal associations.

*Pennington*, 606 F. App'x at 223 n.3 (some citations omitted).

We find the analysis in *Reeves* more persuasive. In the case of condition 18

imposed on Mr. Dickerson, it is not clear which relationships will require the permission

of both the community custody corrections officer and therapist. In addition, though the

*Pennington* court disagreed, its analysis focused on the fact that a defendant would know

when he intended to become romantically involved with another person as the basis for

declining to follow *Reeves*. However, it is the community custody officer and therapist

who are ultimately charged with determining whether Mr. Dickerson has entered into a

romantic relationship and violated his community custody term. It is possible Mr.

Dickerson's community custody officer or therapist could interpret Mr. Dickerson's

9

No. 32899-6-III
*State v. Dickerson*

friendship with an individual as romantic, even where Mr. Dickerson does not intend to enter into a romantic relationship. The condition is open to arbitrary enforcement by community custody officers and therapists with different ideas about the point at which a relationship becomes romantic. The condition is therefore unconstitutionally vague.[3]

In contrast to condition 18, condition 17—which prohibits Mr. Dickerson from having sexual contact with anyone without notifying them of his sexual offense—is both clear, and a reasonable means of protecting Mr. Dickerson's future sexual partners.

We remand with instructions to strike the vague condition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, J.

---

[3] Mr. Dickerson also contends the community custody condition is not crime-related. Because we strike the condition on other grounds, we do not address this argument.

10